## RUTH STONER *v.* MELVIN STONER

HOUSE, C. J., RYAN, SHAPIRO, LOISELLE and MACDONALD, JS.

346

Argued May 4—decided July 5, 1972

*Paul W. Orth,* for the appellant (defendant).

*John Crosskey,* with whom was *Robert P. Knicker-bocker, Jr.,* for the appellee (plaintiff).

MACDONALD, J. The defendant has appealed from two sets of orders incident to a divorce granted to the plaintiff on July 2, 1970. His principal ground

of appeal is from the financial orders of the state referee, exercising the powers of and hereinafter referred to as the court, directing him to pay (1) $250 a week alimony, (2) $50 a week support for each of two minor children whose custody was awarded to the plaintiff, (3) $3300 toward counsel fees and costs, including the expenses of an accountant and a detective, (4) $1000 toward outstanding bills, and (5) directing him to convey to the plaintiff, inter alia, his interest in the jointly-owned residence of the parties free and clear of a second mortgage in the amount of $15,600. A further ground of appeal is from an order of April, 1971, finding him in contempt for failure to comply with the foregoing orders of July 2, 1970.

The first of the defendant's numerous attacks on the finding alleges error in the failure of the court to include therein the material facts contained in some sixty paragraphs of the draft finding on the basis that they were or "should have been" undisputed. We consider only the addition of facts which actually were undisputed. "To secure an addition on this ground, it is necessary for an appellant to point to some part of the appendix, the pleadings, or an exhibit properly before us, which discloses . . . that the fact in question was true or that its truth was conceded to be undisputed. . . . That a fact was testified to and [was] not directly contradicted by another witness is wholly insufficient. . . . The trier is the judge of the credibility of witnesses." *Brown* v. *Connecticut Light & Power Co.*, 145 Conn. 290, 293, 141 A.2d 634; Practice Book § 628 (a); *State* v. *Dukes*, 157 Conn. 498, 500, 255 A.2d 614; *Drazen Lumber Co.* v. *Casner*, 156 Conn. 401, 403, 404, 242 A.2d 754; *Brockett* v. *Jensen*, 154 Conn. 328, 330, 225 A.2d 190; *Dexter Yarn Co.* v. *American Fabrics Co.*,

102 Conn. 529, 540–41, 129 A. 527; *Allis* v. *Hall,* 76 Conn. 322, 340, 56 A. 637; Maltbie, Conn. App. Proc. § 158. The defendant has not established that the court failed to include in its finding any paragraphs which were conceded to be undisputed.

The defendant's second assignment of error attacks the court's inclusion of nineteen paragraphs of the finding as being unsupported by evidence. The attacks on some of the findings have not been pursued and accordingly they are treated as abandoned. *Katz* v. *Brandon,* 156 Conn. 521, 524, 245 A.2d 579; *State* v. *Kohlfuss,* 152 Conn. 625, 635, 211 A.2d 143. The mere fact that the defendant states in his brief "that he is pursuing all assignments of error in all respects except those which find support in his testimony" is not sufficient to preserve them. *Thomas* v. *Ganezer,* 137 Conn. 415, 423, 78 A.2d 539; *Marra* v. *Kaufman,* 134 Conn. 522, 529, 58 A.2d 736; *State* v. *Jones,* 124 Conn. 664, 665, 2 A.2d 374. With respect to the remaining paragraphs claimed to have been found without evidence, they are to be tested against the evidence printed in the appendix to the defendant's brief. The plaintiff apparently elected to rely on the evidence as printed by the defendant together with the exhibits which have been made a part of the finding and accordingly printed no appendix to her brief. Applying this test and, more particularly, taking into account the inferences reasonably to be drawn from a careful analysis of the exhibits pertaining to the defendant's income from and interest in various business enterprises during the taxable years 1968 and 1969, we find that all of the material paragraphs are supported by the evidence. *Walker* v. *Jankura,* 162 Conn. 482, 294 A.2d 536; *Cappiello* v. *Haselman,* 154 Conn. 490, 492, 227 A.2d 79.

The defendant's third assignment of error seeks to strike some twenty paragraphs of the finding on the ground that they are in language of doubtful meaning. No reference to this assignment of error was made either in the defendant's brief or oral argument except for the following statement in the brief: "Defendant also attacks the vague, one-sided, or argumentative findings set forth in the third assignment of errors, but believes they need no elaboration here." We hold the language quoted to be insufficient to prevent this assignment from being considered abandoned. "Assignments of error are also deemed to be abandoned where they are merely mentioned in the brief without any discussion of the particular issues mentioned." *Hartford Electric Light Co.* v. *Water Resources Commission,* 162 Conn. 89, 109, 291 A.2d 721; *Pluhowsky* v. *New Haven,* 151 Conn. 337, 345, 197 A.2d 645. Even had these claims not been considered abandoned, "[s]uch correction will rarely be made and never for the mere purpose of substituting language of counsel for that of the court." Practice Book § 628 (b).

The finding, which is not subject to any material change, reveals the following facts: The plaintiff and the defendant were married June 11, 1950. On July 2, 1970, the plaintiff was granted a divorce on the ground of intolerable cruelty and at that time was awarded custody of two of the four minor children of the marriage. She was then a housewife, forty-four years of age and in good health. As a result of a modification in 1971 of the original judgment, she now has custody of three of the four minor children of the marriage. The defendant, age forty-one and in good health, was an attorney and senior partner in the Hartford law firm of Stoner, Gross and Kline. In addition to his law practice, he had

financial interests in a number of real estate investment and management companies and partnerships. In each of the calendar years 1968 and 1969, his available income from all sources amounted to approximately $50,000. During their married life, the plaintiff and the defendant enjoyed a high standard of living, vacationing at the shore each summer, taking frequent trips to the city of New York and Puerto Rico and residing in a home located at 88 Terry Road, Hartford, valued at between $75,000 and $85,000. Prior to their separation, the defendant gave the plaintiff an allowance of $150 per week in addition to paying all charge accounts and expenses. The plaintiff and the defendant jointly owned the residence at 88 Terry Road which was subject to a first mortgage of $42,000. One month after the parties separated, the defendant executed a second mortgage of $15,600 on his previously unencumbered share of the property to one of his close business associates without receiving present consideration for such mortgage. Based on the foregoing facts, the court rendered the financial orders which are the subject of the defendant's appeal.

Whether the orders under review should stand must be determined largely by our disposition of the defendant's principal contention that the court erred when it included in his income available for alimony and support cash attributable to depreciation taken by the various real estate enterprises in which the defendant owned substantial financial interests. The defendant contends that the annual income of approximately $50,000 attributed to him by the court for the years 1968 and 1969 should be reduced by approximately $14,500 and $17,000 respectively, these amounts representing depreciation deductions allowed for federal taxation and account-

ing purposes. He contends that if his income is thereby reduced to $37,500 for 1968 and $34,000 for 1969, the alimony and support awards of July 2, 1970, would represent such a large percentage of his net available income as to constitute an abuse of discretion by the court.

While this court has not had occasion to pass on this specific issue, case law in other jurisdictions reveals that there are three different basic approaches to the problem, namely, (1) that depreciation is a book figure which does not involve any cash outlay nor reduce actual dollar income and, therefore, should not be allowed as a deduction, (2) that depreciation diminishes income-producing capacity and leads to the eventual replacement of the asset involved thereby warranting its deduction, and (3) that depreciation should not categorically either be deducted as an expense or treated as income, but rather that the extent of its inclusion, if any, should depend on the particular circumstances of each case. *Smith* v. *Smith,* 89 Ariz. 84, 358 P.2d 183; *Sylvan* v. *Sylvan,* 373 P.2d 232 (Okla.); *Commonwealth ex rel. Gitman* v. *Gitman,* 428 Pa. 387, 237 A.2d 181; *Commonwealth* v. *Miller,* 202 Pa. Super. 573, 198 A.2d 373; *Commonwealth* v. *Turnblacer,* 183 Pa. Super. 41, 128 A.2d 177; *Williams* v. *Williams,* 175 Pa. Super. 409, 104 A.2d 499; *Commonwealth ex rel. Rankin* v. *Rankin,* 170 Pa. Super. 570, 87 A.2d 799; *Brackob* v. *Brackob,* 265 Wis. 513, 61 N.W.2d 849; note, 1 A.L.R.3d 6, 45. For the reasons hereinafter discussed, we are inclined to follow the third approach.

"The depreciation charge permitted as a deduction from the gross income in determining the taxable income of a business for any year represents the reduction, during the year, of the capital assets

through wear and tear of the plant used. The amount of the allowance for depreciation is the sum which should be set aside for the taxable year, in order that, at the end of the useful life of the plant in the business, the aggregate of the sums set aside will (with the salvage value) suffice to provide an amount equal to the original cost. The theory underlying this allowance for depreciation is that by using up the plant, a gradual sale is made of it." *United States* v. *Ludey,* 274 U.S. 295, 300, 47 S. Ct. 608, 71 L. Ed. 1054. Depreciation is a mere book figure which does not either reduce the actual dollar income of the defendant or involve an actual cash expenditure when taken. On the contrary, it represents additional cash available to the defendant by permitting substantial tax deductions and, ultimately, tax savings. The fact that the defendant may use some or all of the cash represented by depreciation to pay off principal indebtedness on the property is of no consequence since such payments, in effect, increase his net worth and estate by increasing his equity. *Commonwealth ex rel. Gitman* v. *Gitman,* supra.

Accordingly, while we conclude that depreciation should not be treated as an expense, this is not to say that depreciation should categorically be characterized as a net profit. "If . . . [the defendant] is compelled to expend or exhaust his capital, without opportunity to maintain and preserve that which makes his business possible, it will eventually work to the detriment of both the parties." *Williams* v. *Williams,* supra, 413. In formulating a workable and flexible approach between the two extremes we hold that the amount of depreciation, if any, to be considered in determining the availability of net income for the purposes of alimony and support awards is

best left to the court's discretion, "determined from all the circumstances including the amount of depreciation claimed and the property depreciated." *Commonwealth* v. *Miller,* supra, 577.

In the case before us, the court credited to the defendant's net available income the entire amount of depreciation claimed by the defendant for tax purposes. We cannot say, as a matter of law, that this constituted error since the record and, more particularly, the exhibits reveal ample evidence to support the trial court's decision. "An abuse of judicial discretion will be reviewed on appeal . . . but trial courts have a distinct advantage over an appellate court in dealing with domestic relations, where all of the surrounding circumstances and the appearence and attitude of the parties are so significant." *LaBella* v. *LaBella,* 134 Conn. 312, 318, 57 A.2d 627; *Thomas* v. *Thomas,* 159 Conn. 477, 483, 271 A.2d 62.

Based on a yearly net available income of approximately $50,000, and taking into consideration the intricate financial status of the defendant as a whole, as the court has done, the award is clearly within the reasonable limits of the defendant's ability to provide and not an abuse of discretion. "The amount of alimony or of an award for the support of children is within the sound discretion of the trial court, and its action will not be disturbed unless its discretion appears to have been abused. In fixing the amount of alimony and support, the estate of the husband and his income, age, health and earning capacity are the circumstances primarily to be considered. *Felton* v. *Felton,* 123 Conn. 564, 567, 196 A. 791." *Shrager* v. *Shrager,* 144 Conn. 483, 486, 134 A.2d 69; *England* v. *England,* 138 Conn. 410, 414, 85 A.2d 483. "The statute authorizing an award of ali-

mony is very broad and gives the court a wide discretion. General Statutes § 46-21; *Elmore* v. *Elmore,* 138 Conn. 408, 410, 85 A.2d 491. Alimony is based upon the continuing duty of a divorced husband to support an abandoned wife and should be sufficient to provide her with the kind of living which she might have enjoyed but for the breach of the marriage contract by the defendant." *Thomas* v. *Thomas,* supra; *Shrager* v. *Shrager,* supra, 487. It is apparent from the face of the record that the court was guided by these principles.

In addition to his $50,000 annual available income, the defendant had financial interests in various real estate investment and management companies and partnerships. He held (1) a 27 percent interest in the law firm in which he is a senior partner, (2) a 50 percent interest in David Stoner and Company, (3) a 28 percent interest in the Forty-Four Norwich Company, (4) a 14 percent interest in the Edward Realty Company, (5) a 16⅔ percent interest in Chelsea Associates, (6) a 20 percent interest in Stafford Realty Company, (7) a 15 percent interest in Meadow Realty Company, (8) a 16⅔ percent interest in Beacon Development Corporation, (9) a ⅙ interest in the Interstate Motel Corporation, (10) through the Gerald Gelles trust, a 1/15 interest in Griswold Associates, and (11) a 33⅓ percent interest in property located on the Silas Deane Highway. Even balancing the assets and income of the defendant against his liabilities and expenses, the record reveals ample evidence to support the court's finding, inter alia, that the overall net worth of the defendant was well over $50,000.

At the time of the divorce the court found that the plaintiff owned jointly with her husband a home worth from $75,000 to $85,000, subject to a first mort-

gage of $42,000 and a second mortgage of $15,600. She owned in her own name fifty-five shares of American Telephone and Telegraph Company stock to which no value was fixed and had an inheritance from her mother's estate of $12,500, approximately half of which had been spent to meet current expenses for herself and her children since April, 1969. Her total assets, exclusive of her interest in the home and the fifty-five shares of stock, but including the remainder of her inheritance, totaled only $7286. Her current debts were in excess of $4100 and it cost her approximately $12,000 per year to live exclusive of mortgage and car payments, utilities and expenses paid by the defendant. In addition to herself, the plaintiff, at the time of the divorce, had the custody and support of two minor children. From the circumstances as a whole, we cannot find that the court's orders, including an award of $250 per week alimony and $50 per week support for each child was, as a matter of law, an abuse of discretion. Nor do we find that the court abused its discretion in directing the defendant to quitclaim to the plaintiff his interest in their jointly-held home subject to a first mortgage of $42,000 but clear of a second mortgage of $15,600, the court having found that one month after the parties had separated the defendant executed the latter mortgage, without any present consideration, to one of his close business associates.

The defendant claims that the court erred in ordering him to pay, as expenses incurred by the plaintiff in connection with the divorce action, (1) $2000 in counsel fees, (2) $800 for the plaintiff's accountant, (3) $360 for detective fees, and (4) $140 in court costs, a total of $3300. With regard to the $2000 in counsel fees and court costs, we consistently have held that such an allowance is within the judi-

cial discretion of the trial court and will not be disturbed on appeal unless there has been an abuse of that discretion. "While an action for divorce is a creature of statute, it is essentially equitable in its nature. . . . 'The basis of the allowance [to a wife for expenses of divorce litigation] is that she should not be deprived of her rights because she lacks funds which may be supplied from property in which as a wife, she has a real interest but which is usually within the control of the husband.' *Steinmann* v. *Steinmann,* 121 Conn. 498, 505, 186 A. 501; *Valluzzo* v. *Valluzzo,* 104 Conn. 152, 156, 132 A. 406; *Morgan* v. *Morgan,* 104 Conn. 412, 415, 133 A. 249; *Marino* v. *Marino,* 136 Conn. 617, 620, 73 A.2d 339. Under the common law of England and of most of the states of the union, the power to make an allowance for counsel fees and expenses of litigation in matters pertaining to actions for divorce is inherent in the court." *Krasnow* v. *Krasnow,* 140 Conn. 254, 261, 99 A.2d 104. "Whether to allow counsel fees, and if so in what amount, is a matter which . . . calls for the exercise of a judicial discretion." Id., 262; *Felton* v. *Felton,* 123 Conn. 564, 567, 196 A. 791. Without again discussing in detail the financial circumstances of the respective parties, the record clearly reveals that the plaintiff was without adequate funds to pay the fees and that the defendant was financially able to do so. We cannot say, therefore, that the court abused its discretion in the allowance which it made. *Marino* v. *Marino,* 136 Conn. 617, 620, 73 A.2d 339; *Steinmann* v. *Steinmann,* 121 Conn. 498, 505, 186 A. 501.

Somewhat analogous to the subject of counsel fees is the question as to whether a court also may impose the cost of investigatory services on a husband in a successful suit for divorce by the wife. In the

case before us, the court awarded to the plaintiff detective fees in the amount of $360. The law of other states and of England favors the allowance of such fees as a proper exercise of the trial court's discretion. Note, 99 A.L.R.2d 264 and cases collected. Since Connecticut follows the common law of England in allowing counsel fees and expenses of litigation in divorce matters as an inherent power of the trial court, we hold that detective fees also may be awarded to a wife under appropriate circumstances at the judicial discretion of the court. Such an award should not be considered a matter of right, but rather, should be determined on the particular facts of each case after a proper analysis of all relevant circumstances. Further, "such charges should not be allowed unless the . . . [court], in the exercise of . . . [its] discretion is fairly convinced by conclusive and satisfactory proof that it . . . [is] reasonably necessary for the wife to employ an investigator." *Rubin* v. *Rubin,* 233 Md. 118, 129, 195 A.2d 696. Although there is no evidence in the record before us of the details of the investigatory services, their general nature reasonably could be inferred by the court from the allegations in the complaint as necessary to the maintenance of the plaintiff's action.

For similar reasons we also hold that an award of accountant fees may be allowed under appropriate circumstances. See *Estes* v. *Estes,* 158 Cal. App. 2d 94, 322 P.2d 238; *Cohen* v. *Cohen,* 156 Cal. App. 2d 191, 319 P.2d 66; *Low* v. *Low,* 143 Cal. App. 2d 650, 299 P.2d 1022; 24 Am. Jur. 2d, Divorce and Separation, § 577. In the case before us, the defendant's intricate financial situation, involving interests in numerous real estate investment and management companies and partnerships, warranted such an award. That the accountants were not called as wit-

nesses to attack the financial figures submitted by the defendant is not conclusive as to the reasonableness of their having been hired.

In support of his further ground of appeal, the defendant contends that the trial court erred in holding him in contempt of court for failing to comply fully with the divorce orders of July 2, 1970. Following the defendant's filing of an appeal from those orders, the plaintiff moved for a termination of stay of execution which was granted in January, 1971, after due notice and a hearing. Thereafter, this court denied a motion of the defendant to review the termination order and also denied a motion to reconsider such denial. Pursuant to a motion of the plaintiff, the trial court *(Rubinow, J.)* held the defendant in contempt, having found, inter alia, that the plaintiff was in arrears in the amount of $4356, consisting of $3300 in counsel fees and expenses, $690 in unpaid bills, and $366 alimony and support. Following a timely appeal from the contempt order, the trial court, pursuant to a motion submitted by the plaintiff, and after due notice and a hearing, terminated the stay subject to a further stay so long as the defendant paid full alimony and support and $75 each week toward the arrearage. A motion to this court to review the termination of the stay was denied in October, 1971.

The defendant concedes in his brief that if he is not entitled to a new trial on the financial matters, most of the issues on appeal from the contempt serve no practical purpose. Additionally, most of the claims of error pertaining to the contempt either have not been pursued in the brief or have been mentioned so briefly as to be considered abandoned. *Hartford Electric Light Co.* v. *Water Resources Commission,* 162 Conn. 89, 109, 291 A.2d 721; *South-*

*ern New England Telephone Co.* v. *Rosenberg,* 159 Conn. 503, 509, 271 A.2d 87; *Pluhowsky* v. *New Haven,* 151 Conn. 337, 345, 197 A.2d 645.

"Contempt is a disobedience to the rules and orders of a court which has power to punish for such an offense. *Welch* v. *Barber* . . . [52 Conn. 147, 157]; 2 Swift, Digest, p. 358. . . . A civil contempt is one in which the conduct constituting the contempt is directed against some civil right of an opposing party and the proceeding is initiated by him. *Lyon* v. *Lyon,* 21 Conn. 185, 198; *Rogers Mfg. Co.* v. *Rogers,* 38 Conn. 121, 123; *German* v. *German,* 122 Conn. 155, 161, 188 A. 429." *State* v. *Jackson,* 147 Conn. 167, 168–69, 158 A.2d 166. Contempts which do not occur in the presence of the court, as in this case, are not punishable by statute, but rather, "are defined and punished by the common law." *Welch* v. *Barber,* 52 Conn. 147, 156. "An adjudication of contempt is final and may be reviewed only on questions of jurisdiction such as whether the court had authority to impose the punishment inflicted and whether the act or acts for which the penalty was imposed could constitute a contempt." *State* v. *Jackson,* supra, 170; *Goodhart* v. *State,* 84 Conn. 60, 63, 78 A. 853. An examination of the record reveals that the contempt order was properly entered, the finding, not subject to any correction, amply supporting the conclusions of the court on which the order was based. Nor do we find merit in the contention that the defendant was denied due process of law.

The defendant's final claim of error directed toward the support award of a third minor child was expressly abandoned at oral argument and need not be considered.

There is no error.

In this opinion the other judges concurred.