In re the **MARRIAGE OF Marc G. WORTHINGTON and Michele K. Worthington.**

Upon the Petition of Marc G. Worthington, Appellant,

And Concerning Michele K. Worthington, Appellee.

No. 92–996.

Court of Appeals of Iowa.

May 25, 1993.

As Corrected May 26, 1993.

Bert A. Bandstra, Knoxville, for appellant.

Fred L. Dorr of Wasker, Dorr, Wimmer & Marcouiller, P.C., Des Moines, for appellee.

Heard by OXBERGER, C.J., and DONIELSON and SACKETT, JJ., but decided en banc.

DONIELSON, Judge.

Marc Worthington appeals the district court's dissolution decree.

Marc and Michele Worthington were married in 1983. They have three children: Mackenzie, born in 1985; Spencer born in 1988; and Connor, born in 1990.

Marc is a high school graduate who currently operates a farm. Due to the large amount of depreciation claimed on his machinery and equipment, Marc has not shown a profit from farming for several years. In 1990, Marc's income tax return showed a loss of $6378 and depreciation in the amount of $33,522.

Michele has a B.A. degree from Central College. She is currently employed by Iowa Power and Light Company and has

been since 1984. In 1990, Michele earned a net monthly income of $2013.

In June 1991, Marc filed a petition for dissolution of marriage. In January 1992, the matter proceeded to a bench trial. After trial, the court awarded the farm to Marc and ordered him to pay Michele $20,500 in yearly installments of $5000. The court granted the parties joint legal custody and awarded primary physical care of the children to Michele. The district court applied the child support guidelines and disallowed any depreciation expense on his farm equipment. The court determined Marc's net monthly income to be $2262 and ordered Marc to pay $790 per month in child support.

Marc now appeals. He contends he did not receive a fair trial because of the partiality of the district court judge. Marc also contends he should have been awarded primary physical care of the three children. Finally, Marc argues the court erred in calculating his net income for purposes of applying the child support guidelines by disallowing any deduction for his depreciation expenses.

■ In this equity action, our review is de novo. Iowa R.App.P. 4. We have a duty to examine the entire record and adjudicate anew rights on the issues properly presented. *In re Marriage of Steenhoek,* 305 N.W.2d 448, 452 (Iowa 1981). We give weight to the fact findings of the trial court, especially when considering the credibility of witnesses, but are not bound by them. Iowa R.App.P. 14(f)(7).

■ **I. *Whether Marc Received a Fair Trial.*** Marc first contends he did not receive a fair trial. He specifically points to the fact the court interrupted his witnesses and his cross-examination of Michele's witnesses on numerous occasions. He points to several comments made by the court during the pendency of trial. He argues the court was "overzealous" in protecting Michele. Finally, Marc criticizes the district court for giving too much weight to evidence that Marc had fathered two children out of wedlock, that Marc had purchased a stolen computer, and that Marc had filed a questionable insurance claim.

■ There is a substantial burden imposed upon one who seeks to prove the district court judge was not impartial. *State v. Farni,* 325 N.W.2d 107, 110 (Iowa 1982). In order to constitute the prejudice necessary to necessitate a different judge, the alleged bias " 'must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case.' " *Id.* (citations omitted).

■ To the extent the district court improperly considered certain evidence, we review only for an abuse of discretion. *State v. Halstead,* 362 N.W.2d 504, 506 (Iowa 1985). As property division, child support, and child custody were all at issue, it was well within the discretion of the district court to consider evidence regarding Marc and the two other children he had fathered, his actions surrounding the stolen computer, and his truthfulness with his insurance company. The admission of and the weight given to this evidence did not deny Marc a fair trial.

■ Regarding the judge's comments and questioning of the witnesses, we find the judge acted impartially. "A trial judge is allowed greater latitude to comment during a bench trial than might be acceptable during a jury trial." 75 Am.Jur.2d *Trial* § 276. That is, the concerns regarding making inadvertent comments which may prejudice a jury simply are not present in a bench trial. Also, the district court may direct questions to a witness so long as the questioning is impartial and not prejudicial. 75 Am.Jur.2d *Trial* § 274.

On our review, we note the district court was unusually active in examining the witnesses who testified at trial. This case involved numerous issues, including custody and the determination of child support. Marc's economic situation as a self-employed farmer demanded careful attention. Many of the questions asked by the district court were simply intended for the protection of the three children's best interests in

what this court perceives to be a complicated dissolution case. We find the judge acted impartially and Marc was not denied a fair trial.

■ **II.** *Child Custody.* Marc next contends the district court should have awarded him primary custody of the three minor children.

■ In child custody cases, the best interests of the child is the first and governing consideration. The factors the court considers in awarding custody are enumerated in Iowa Code section 598.41(3), in *In re Marriage of Weidner,* 338 N.W.2d 351, 355–56 (Iowa 1983), and in *In re Marriage of Winter,* 223 N.W.2d 165, 166–67 (Iowa 1974). All factors bear on the "first and governing consideration," the court's determination of what will be in the long-term best interests of the child. *In re Marriage of Vrban,* 359 N.W.2d 420, 424 (Iowa 1984). The critical issue in determining the best interests of the child is which parent will do better in raising the child. *In re Marriage of Ullerich,* 367 N.W.2d 297, 299 (Iowa App.1985). Gender is irrelevant, and neither parent should have a greater burden than the other in attempting to gain custody in a dissolution proceeding. *Id.*

We find the issue of primary physical custody is definitely a close call. Both Marc and Michele appear to care deeply for the three children and their welfare. However, on our review, we find Michele will offer the three children an emotionally stable environment which will better serve the long-term best interests of the children.

Michele has held a steady position as an accountant for Iowa Power since 1984. She presently lives in a home one mile from her parent's home and several miles from her brother. Her home has more than adequate room for the three children.

After Spencer and Connor were born, Michele informed Marc of her wish to stay home with the children. However, Michele testified Marc was insistent she return to work. Despite the fact Michele has worked throughout most of her children's lives, she still appears to have been the primary caregiver for the children. During the daytime, the children stayed in daycare and not with Marc. During the weekends, Michele often took the children with her while she shopped and ran other errands. During the evenings and weekends, Michele did most of the cooking and other housework.

In its decision awarding Michele custody, the district court focused much attention on the previous conduct and actions of Marc. Marc continues to owe a substantial amount of money to the Department of Human Services (DHS) for back support owed, and DHS has twice taken action to intercept his income tax refund in connection with this indebtedness. At trial, Marc was implicated in several questionable incidents, including the purchase of a stolen computer which he later refused to return and the filing of a insurance claim which wrongfully implicated his nephew. Other evidence suggested Marc had been less than candid in completing his affidavit of financial status for purposes of the dissolution.

■ Taken in isolation, these incidents would have little, if any, weight in our decision to affirm the district court's decision regarding custody. However, cumulatively these incidents demonstrate Marc's disregard for the law and seriously question Marc's ability to take responsibility for his own actions. Although not determinative of custody, moral misconduct is a serious consideration in custody determinations. *In re Marriage of Zabecki,* 389 N.W.2d 396, 398 (Iowa 1986).

The above incidents, coupled with Michele's ability to offer the children a more stable and comfortable home, demonstrate Michele will do better in raising the children. This court does take note of the district court's finding that Marc has more closely bonded with the children. However, in light of the above factors, it remains in the children's *long-term* best interests that primary physical custody remain with Michele.

■ **III.** *Child Support.* Marc next contends the district court erred in assessing Marc's child support obligation. Spe-

cifically, Marc contends the district court should have allowed Marc to take straight-line depreciation in calculating his net monthly income for purposes of his child support obligation.

"There is a rebuttable presumption that the amount of child support which would result from the application of the guidelines is the correct amount of child support to be awarded." *In re Marriage of Bergfeld,* 465 N.W.2d 865, 869 (Iowa 1991). The supreme court has directed "[t]he court shall not vary from the amount of child support which should result from the application of the guidelines without a written finding that the guidelines would be unjust or inappropriate." *In re Marriage of Hansen,* 465 N.W.2d 906, 910 (Iowa App.1990). *See* Iowa Code § 598.21(4)(b).

██ Marc has the burden of proving the application of guidelines would be unjust or inappropriate. The court may vary from the guidelines if it finds:

(1) Substantial injustice would result to the payor, payee, or child;

(2) Adjustments are necessary to provide for the needs of the child and to do justice between the parties, payor, or payee under the special circumstances of the case; and

(3) Circumstances contemplated in Iowa Code section 234.39 [regarding foster care].

Child Support Guidelines (December 31, 1990). *See Bergfeld,* 465 N.W.2d at 869.

██ In defining "net monthly income," the guidelines do not provide for a deduction for allowed depreciation. *See* Child Support Guidelines (December 31, 1990). However, in *In re Marriage of Gaer,* 476 N.W.2d 324, 326 (Iowa 1991), our supreme court recognized the court's flexibility to allow all or part of straight-line depreciation as a deduction from gross income given a finding the guidelines would otherwise be unjust or inappropriate.

In its decision, the court relied upon the reasoning of the Connecticut Supreme Court in *Stoner v. Stoner,* 163 Conn. 345, 349–51, 307 A.2d 146, 151 (1972). The

*Stoner* court recognized the economic reality behind depreciation allowances:

"Depreciation is a mere book figure which does not either reduce the actual dollar income of the defendant or involve an actual cash expenditure when taken. On the contrary, it represents additional cash available to the defendant by permitting substantial tax deductions and, ultimately, tax savings."

*Gaer,* 476 N.W.2d at 328 (quoting *Stoner,* 163 Conn. at 352–53, 307 A.2d at 152). Yet, the *Stoner* court also noted: " 'If ... [the defendant] is compelled to expend or exhaust his capital, without opportunity to maintain and preserve that which makes his business possible, it will eventually work to the detriment of both parties.' " *Id.*

As a result, the *Stoner* court concluded and the Iowa Supreme Court agreed the decision of whether depreciation should be allowed must be left to the court's discretion " 'determined from all the circumstances including the amount of depreciation claimed and the property depreciated.' " *Id.* In sum, our supreme court concluded: "In reaching this conclusion we recognize that *some* consideration must be given to business expenses reasonably necessary to maintain the business or occupation. This *may,* as here, include a reasonable allowance for straight-line depreciation." *Id.* at 329 (emphasis in original).

In assessing Marc's child support obligation, the district court refused to provide Marc with any deductions for depreciation. The court found the depreciation which Marc had claimed and the equipment and livestock which Marc had acquired in the past three years demonstrated available cash flow and available income. As a result, relying upon a net loss of $6378 for the year 1990, the district court offset the loss by the accelerated depreciation Marc had claimed for that year ($33,522) and found Marc's net income to be $27,144 (−$6278 + $33,522 = $27,144).

Although this court recognizes Marc has available cash flow and income well above his reported loss of $6378 for 1990, we find Marc should be allowed some deduction for the depreciation he has claimed. In *In re*

*Marriage of Cossel*, 487 N.W.2d 679 (Iowa App.1992), this court recognized depreciation as a valid cost of doing business in farming:

> As a farmer, [petitioner] needs machinery and equipment to produce crops. Depreciation deductions for farm machinery reflect a decrease in the value of the equipment and have been established by the Internal Revenue Service and Congress to reflect the cost of doing business.

*Id.* at 682.

The courts in *Gaer* and *Cossel* allowed depreciation to be taken using the straight-line method. *Gaer*, 476 N.W.2d at 329; *Cossel*, 487 N.W.2d at 683. Therefore, for purposes of our analysis, we will rely upon the straight-line method. At trial, Donald Kain, the parties' tax accountant, testified Marc's depreciation for 1990 would be $27,073 using the straight-line method of depreciation (compared to the $33,522 using the accelerated method). The difference between the amount claimed using the accelerated method of depreciation ($33,522) and the straight-line method ($27,073) is $6449. Therefore, using the straight-line method of depreciation, Marc's net income for 1990 would be $71 (−$6378 + $6449 = $71).

However, unlike the courts in *Gaer* and *Cossel*, our analysis cannot stop at this juncture. If we were to rely upon a yearly net income of $71 (or a monthly income of $5.92) in assessing Marc's child support obligation, it is clear substantial injustice would result to Michele and the three children. Furthermore, we note that, using the child support guidelines' chart for three children, the determination of Marc's support obligation is left to the discretion of the court because Marc's net monthly income is so low.

Therefore, this court determines in light of Marc's unusual financial situation and the needs of the three children, Marc's support obligation shall be modified to $440 per month. This amount is considerably less than the $790 awarded by the district court which gave no consideration to the depreciation Marc claimed. However, we are unwilling to give Marc full credit for the entire amount of depreciation he has claimed in light of the substantial injustice which would result to the three children. If Marc's income reaches a level at which the support guidelines may be applicable (a net monthly income of $501), this court finds Marc's support obligation still shall not be less than $440 per month, absent a finding substantial injustice would result to Marc.

The costs of this appeal are taxed one-half to Marc and one-half to Michele.

For the reasons stated, the judgment of the district court is affirmed as modified.

**AFFIRMED AS MODIFIED.**

All Judges concur, except SACKETT and HAYDEN, JJ., who concur in part and dissent in part.

SACKETT, Judge (concurring in part and dissenting in part).

I concur in part and dissent in part.

I would make Marc the physical custodian of the parties' three children. While the evidence shows both Marc and Michelle to be concerned parents, the testimony of Mr. and Mrs. Lamb, who have provided child care for the children since the oldest child was two months old, in my judgment clearly tips the scales in Marc's favor. The trial court gave little weight to this couple's testimony. I give considerable weight to the testimony of this couple who were chosen and trusted both by Marc and Michelle as child care providers.

I also look to the following findings made by the trial court:

> It is quite probable that the children have and are more closely bonded with the Petitioner [Marc] than the Respondent [Michelle]. It is also undoubtedly true that it will be traumatic to separate the children from their father and place them in the custody of their mother. This trauma will not be permanent in nature and probably not even long-lasting. The Respondent [Michelle] should not be and will not be penalized for working to support this family in part at least at her husband's insistence.

Both parties worked outside the home. Michelle has more education than Marc and her employment outside the home has been more lucrative. This family needed two incomes. Farming alone frequently does not provide adequate support for families.

Marc contends also that he did not receive a fair trial. Because we review de novo and make our own independent findings of fact, it is not necessary we address the issue and I do not address the issue.

The majority has corrected what I found to be a substantial inequity in the refusal of the trial court to allow Marc, a self-employed farmer, to claim *any* depreciation deduction. However, I depart from the majority's suggestion that cash flow is in any way determinative of the net income of a self-employed business person or farmer.

HAYDEN, J., joins this partial dissent.