[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
A dissolution of marriage Judgment was entered in this matter on December 6, 1994. Said Judgment incorporated by reference a written Agreement of the parties, which included a provision granting joint custody of the minor child (Brien Buckland, born Jan. 26, 1990), and primary residence with the Plaintiff wife (hereinafter the "Petitioner"). A very detailed written addendum regarding visitation arrangements was attached to said Agreement. Further, the Agreement provided a child support order in the amount $285 per week payable by the Defendant husband (hereinafter the "Respondent") based upon his stipulated earning capacity of $100,000 per year as a self-employed medical doctor and the Petitioner's stipulated earning capacity of $30,000 per year as a registered nurse.
Subsequently, the Respondent filed a Motion to Modify Custody and Visitation. On September 3, 1999, the Court rendered a written decision that adds several days of overnight visitation per year and several hours of daylight visitation per month to the previous Agreement. It does not contain any language that modifies the previous order of "primary residence" with the Petitioner.
The Respondent has filed a Motion for Modification of Child Support Post Judgment dated July 18, 2001. He seeks a reduction in current child support order based upon one or more of the following reasons:
1. The current custody/visitation arrangement is in effect a "shared custody' arrangement, thereby entitling him to a downward deviation on the presumptive child support order under the State of Connecticut Child Support Guidelines; and/or
2. The Petitioner is now earning a salary of approximately $37,440 per year as a School Nurse/Supervisor for a local public school district; and/or
3. The Petitioner's current earning capacity is greater than her CT Page 8203-bo current earnings, thereby entitling the Respondent to a downward deviation.
The Petitioner then filed a Motion for Modification of Child Support Post Judgment dated October 9, 2001. She claims that the Respondent's actual earnings and/or earning capacity have increased substantially since the 1994 Judgment.
Therefore, by agreement of the parties, a hearing was held by this Court on both Motions for Modification. Each party was represented by counsel. The hearing took approximately two fill days. It included testimony from the Respondent's accountant, the Petitioner's accountant and a nurse recruiter called by the Respondent.
It is well settled that in a Motion to Modify hearing, the burden of proof is on the moving party seeking the modification. Connolly v.Connolly, 191 Conn. 468, 473, 464 A.2d 837 (1983); Kaplan v. Kaplan,185 Conn. 42, 46, 440 A.2d 252 (1981); Mansfield v. Haynes, 12 S.M.D. 51, 52 (1998); Tavares v. Tavares, 15 S.M.D. ___ (Bridgeport Superior Court, 6/15/01, Colella, F.S.M.), Janik v. Janik, 15 S.M.D. ___ (Rockville Superior Court, 12/30/01, Colella, F.S.M.); additional citations omitted. The moving party must demonstrate that continued operation of the existing order would be unfair or improper. Harland v. Harland,5 Conn. App. 355, 357, 496 A.2d 129 (1985); Mansfield v. Haynes, 12 S.M.D. 51, 52 (1998); Tavares, supra; Janik, supra; additional citations omitted. The party seek modification must clearly and definitively show individual facts and circumstances which have substantially changed.McGuiness v. McGuiness, 185 Conn. 7, 10, 440 A.2d 804 (1981); Tavares, supra, Janik, supra; Easley v. Easley, 15 S.M.D. ___ (New Britain Superior Court, 9/12/0 1, Lifshitz, F.S.M.); additional citations omitted.
"This court as trier of fact, is obligated to determine the credibility of witnesses and the weight to be given their testimony." Gatter v.Gatter, 15 S.M.D. ___ (2001, Lifshitz, F.S.M.); Griffin v. NationwideMoving and Storage Co., 187 Conn. 405, 422, 446 A.2d 799 (1982); Ricciov. Abate, 176 Conn. 415, 418, 407 A.2d 105 (1979); Fazaj v. Fazaj, 16 S.M.D. ___ (Waterbury Superior Court, 2/28/02, Colella, F.S.M.); additional citations omitted. The Court has the right to accept part and disregard part of the testimony of any witness. Gatter v. Gatter, supra,Barrila v. Blake, 190 Conn. 631, 639, 461 A.2d 1375 (1983); Rood v.Russo, 161 Conn. 1, 3, 283 A.2d 220 (1971); Lynk v. Lynk, 11 S.M.D. 233, 241 (1997); Fezaj v. Fezaj, supra; additional citations omitted.
In assessing what an appropriate order should be, it is well established that a court may consider party's earning capacity rather than actual income in computing a support order. Carey v. Carey, CT Page 8203-bp29 Conn. App. 436, 440, 615 A.2d 516 (1992); Miller v. Miller,181 Conn. 610, 611-612, 436 A.2d 279 (1980); Pascal v. Pascal,2 Conn. App. 472, 482, 481 A.2d 68 (1984); Harris v. Harris, 15 S.M.D. ___ (Litchfield Superior Court, 2/14/01, Bentivegna, F.S.M.). One's earning capacity is a deviation criteria provided in the Child Support Guidelines (Regs. Connecticut State Agencies § 46b-15a-3 (b)(1) B. Earning capacity is among the statutory factors for the Court to consider in determining whether a child is in need of support and the respective abilities of the parties to provide it. Connecticut General Statutes § 46b-84 (d). Harris, supra.
A. SHARED CUSTODY ISSUE
The Respondent asserts that the current custody and visitation arrangement results in the child being with the Respondent close to 50% of the time. This apparently includes six out of fourteen nights during the school year and seven out of fourteen nights during the summer. However, this Court finds that this current custody/visitation arrangement as established by the order of September 3, 1999, is not a substantial change in circumstances regarding the custody/visitation arrangement established through the dissolution of marriage Judgment. Therefore, this Court declines to apply a shared custody deviation.
B. RESPONDENT'S EARNINGS/EARNING CAPACITY
The Respondent is (in effect) a self-employment medical doctor, as the sole shareholder of a professional corporation (hereinafter his "Medical P.C."). He was provided with W-2 forms from the Medical P.C. reflecting gross earnings for the years 2000 and 2001 in the total amount of $117,211 and $101,211 respectively. Each figure includes a contribution to a "401-K" retirement plan. The Petitioner asserts that the Respondent's actual earnings are much greater than said figure based upon a review of the Respondent's 40-page personal federal income tax return for the year 2000 (filed jointly with his present wife) and his corporate federal income tax returns for the years 2000 and 2001. The Respondent's accountant testified that the Respondent's personal tax return for the year 2001 had not been prepared as of the date of his testimony (1/29/02), though he indicated that its figures would be similar to the individual tax return for the year 2000. The Respondent provided the 2001 corporate federal income tax returns for the year 2001 at the 4/2/02 hearing continuation date. However the Court is somewhat troubled by the Respondent's failure to produce his 2001 personal return at the 4/2/02 or the 4/9/02 hearing dates. This failure makes the Court's task in this mailer more difficult.
The Plaintiff's accountant testified that the amount of rent paid to CT Page 8203-bq the Respondent (as owner/landlord of the medical office building) by the Medical P.C. and other tenants should be considered actual income, after deducting for reasonable ownership expenses.
Further, the Plaintiff's counsel asserted that the amount of depreciation taken by the Respondent on his commercial real estate also should be considered. This Court recognizes that it may consider the income tax savings enjoyed by the Respondent resulting from the application of the depreciation deduction. See Stoner v. Stoner,163 Conn. 345, 352, 307 A.2d 146 (1972). However, it is noted that the Petitioner's accountant indicated that she would not be concerned with consideration being given to the depreciation issue. Therefore the Court declines to consider the depreciation issue in this matter.
The Court finds, however, that the Respondent's net rental income from the Medical P.C. and other tenants in the year 2000 was approximately $45,000 as indicated by the Petitioner's accountant. This Court further accepts the Respondent's testimony that the rental income from the only other current tenant (a dentist) was reduced by $15,876 per year in early 2001 (as a result of lease renewal negotiations). However, the Court does not accept the Respondent's claim that the rental income from his Medical P.C. was reduced by $10,000 in the year 2001, for the following reasons: the Respondent's status as both landlord and tenant; the timing of this reduction in relation to the filing of his Motion to Modify; and his failure to produce the 2001 personal income tax return.
Therefore, the Court finds the Respondent's actual gross annual earnings from his medical practice to be $109,212, i.e., the average of his W-2 earnings for the years 2000 and 2001. Further, the Court finds the Respondent's rental income to be $29,124, i.e., $45,000 minus $15,876. Thus the Court finds the Respondent's total actual earnings to be $138,336, and that said amount equals his current earning capacity.
C. PETITIONER'S EARNINGS/EARNING CAPACITY
The Petitioner indicates that she started her current position as a school nurse and nurse supervisor in September, 1997. This was subsequent to her obtaining a B.S.N. degree. She indicates that her schedule mirrors the school schedule of 186 days per year while school is in session plus 8 days during each summer. She usually works 7 hours per day, though occasionally must stay late. She serves as the school nurse at the building where her office is located and supervises 10 other school nurses in the school system. Thus at 195 days per year, she works thirty-nine weeks per year.
The Respondent presented testimony of a nurse recruiter suggesting that CT Page 8203-br the Petitioner could expect to earn well over $50,000 per year if she accepted full-time employment as a registered nurse in a hospital or other medical care provider. The nurse recruiter testified that such employment would result in an hourly rate of at least $26.50 — $27.00 per hour, given the Petitioner's level of education and experience. The Respondent argues that the Petitioner should be expected to work more than 39 weeks per year in order to be considered working "full time" for purposes of calculating Child Support Guidelines.
The Petitioner currently earns approximately $27.40 per hour ($37,400 annual salary divided by 39 weeks equals $959 per week divided by 35 hours per week equals $27.40). The Court finds that it is reasonable for the Petitioner to maintain employment as a school nurse in terms of her hourly wages. The Petitioner certainly is not over-qualified for this job. Further, the Court notes that if the Petitioner was employed as a teacher with the same schedule, the teaching position would be a sufficient "full time" occupation in terms of annual work schedule for purposes of calculating a child support orders. Therefore the Court finds that the Petitioner is similarly, reasonably and sufficiently employed "full time" in her chosen profession. Thus the Court finds that the Petitioner's earning capacity does not exceed her current actual earnings.[1]
The Court then performed a Guidelines Worksheet calculation applying the Respondent's gross annual earnings of $138,336 and the Petitioner's gross annual earnings of $37,400, giving the Respondent a credit for a qualified child in defense to the Petitioner's Motion to Increase Child Support (since the percentage increase in the Respondent's earnings is greater than the Petitioner's percentage increase). The resulting presumptive order is $296.00.[2] Obviously this results in a deviation of less than 15% from the current weekly order of $285 per week. Connecticut General Statutes § 46b-86 (a) allows a modification of alimony or support orders "upon a showing of substantial changes in the circumstances of either party or upon a showing that the final order for child support substantially deviates from the Child Support Guidelines. . . . There shall be a rebuttable presumption that any deviation of less than 15% from the Child Support Guidelines is not substantial. . .". The Court finds that this presumption has not been rebutted.
 CONCLUSION
Accordingly, the Respondent's Motion for Modification of Child Support Post Judgment is hereby denied and the Petitioner's Motion for Modification Post Judgment is hereby denied. Therefore, the current child support order shall remain at $285 per week.[3]
CT Page 8203-bs
BY THE COURT
 ___________________ JOHN E. COLELLA Family Support Magistrate