# IN THE COURT OF APPEALS OF IOWA

No. 19-0038
Filed February 5, 2020

IN RE THE MARRIAGE OF CARRIE LEFF
AND CHARLES LEFF

Upon the Petition of
CARRIE LEFF,
    Petitioner-Appellee,

And Concerning
CHARLES LEFF,
    Respondent-Appellant.

_____

Appeal from the Iowa District Court for Howard County, James D. Coil, Judge.

Charles Leff appeals the provisions regarding child support and tax benefits from the ruling dissolving his marriage to Carrie Leff. **AFFIRMED AS MODIFIED AND REMANDED.**

Christopher F. O'Donohoe of Elwood, O'Donohoe, Braun & White, LLP, New Hampton, for appellant.

Jeremy L. Thompson of Putnam, Fern & Thompson Law Office, P.L.L.C., Decorah, for appellee.

Heard by Tabor, P.J., and Greer and Ahlers, JJ.

**AHLERS, Judge.**

The husband in a dissolution of marriage proceeding challenges the trial court ruling setting the husband's child support obligation and apportioning the right to claim the parties' three minor children as dependents on the parties' tax returns. He argues the trial court improperly determined his income for calculating his child support obligation and improperly allowed the wife to claim one of the parties' children as a dependent on her tax returns. The wife agrees with the trial court ruling and requests appellate attorney fees.

We agree with the trial court that the husband's gross annual income for support purposes is $84,440.00, but we find his entire income is taxable. Therefore, we remand to the district court for the purpose of calculating the husband's child support obligation using $84,440.00 in taxable gross annual income and entering a corresponding support order. Because the child support obligation may influence the determination of how to equitably allocate the right to claim the children as dependents on the parties' tax returns, we also remand to reconsider such allocation. We otherwise affirm the trial court, and we deny the wife's request for appellate attorney fees.

## I.     Background Facts and Proceedings

Charles Leff and Carrie Leff were married in 2000. The couple had three children, born in 2003, 2005, and 2007. In 2017, Carrie petitioned for dissolution of the marriage. The parties entered into a pretrial stipulation that resolved many, but not all, of the parties' issues. The stipulation included an agreement that the parties would have joint legal custody of the parties' children and Carrie would

have physical care of all three children. The matter proceeded to trial on the issues that were not resolved by the parties' pretrial stipulation.

Carrie works as an associate in her local school district. For child support purposes, the trial court determined her gross annual income to be $15,000.00. Charles does not challenge this determination.

Charles works as a service technician for a local business earning $22.00 per hour. In addition to his income as a service technician, Charles has other sources of income. He is a member of the United States Army Reserves. His normal commitment to the Army Reserves is one weekend per month and two weeks per year, though he often serves additional time as well. He does not earn wages as a service technician during his service in the Army Reserves. He plans to continue serving in the Army Reserves. In 2017, he earned $12,179.84 from the Reserves.

The trial court found that Charles also earns additional income from farming. He received approximately fifty-five acres of farmland in the parties' property distribution. He also farms 120 acres held in trust with all net trust income paid to him.[1] The parties' tax returns show they earned farm income as follows:

---

[1] These 120 acres passed to the trust on the death of Charles's father according to his will. His father's will passed additional farmland to a trust with the net trust income paid to Charles's mother and then Charles upon her death.

| Tax Year | Net Farm Income | Section 179 Deduction[2] | Net Farm Income Plus Section 179 |
|----------|-----------------|--------------------------|-----------------------------------|
| 2013 | $78.00 | $79,738.00 | $79,816.00 |
| 2014 | $3457.00 | $45,376.00 | $48,833.00 |
| 2015 | $2644.00 | $25,000.00 | $27,644.00 |
| 2016 | $0 | $7744.00 | $7744.00 |
| 2017 | -$11,734.00 | $0 | -$11,734.00 |
| Average | -$1111.00 | $31,571.60 | $30,460.60 |

Charles claims he received gifts of grain from his mother that he sold and reported as taxable income worth $9305.00 in 2015 and $19,246.00 in 2016.

Following a trial on the issues not resolved by the parties' pretrial stipulation, the trial court issued a ruling setting Charles's child support obligation and allocating the right to claim the children as dependents on the parties' respective tax returns. In the ruling, the court found three components to Charles's annual income for child support purposes. First, it found Charles receives $42,240.00 in annual wages as a service technician, calculated by multiplying his $22.00 hourly wage times forty hours per week for forty-eight weeks. Second, it found he receives $12,200.00 in annual income from the Army Reserves. Third, it found he receives $30,000.00 in untaxed annual farm income. In determining Charles's farm income, the court used a five-year average of the net farm income without section 179 deductions, as summarized in the above table. The court refused to allow him to deduct from his income the value of the gifts of grain he claimed to have received. The court concluded Charles's total annual gross income is $84,440.00. Using the parties' adjusted net incomes and giving Charles a 15%

---

[2] Section 179 of the Internal Revenue Code allows a taxpayer to elect to deduct the cost of certain types of property on the taxpayer's tax returns rather than requiring the cost to be capitalized and depreciated. *See* 26 U.S.C. § 179; *In re Marriage of Gaer*, 476 N.W.2d 324, 325 (Iowa 1991).

reduction for extraordinary visitation credit, the court ordered Charles to pay monthly child support of $1419.00 for all three children, decreasing to $1218.87 when only two children are eligible for support, and decreasing to $845.30 when only one child is eligible for support. The court also granted Carrie the right to claim the middle child as a dependent on her tax returns and granted Charles the right to claim the oldest and youngest children as dependents on his tax returns. Charles now appeals the provisions regarding child support and allocation of the dependent exemptions, and Carrie requests appellate attorney fees.

## II.    Standard of Review

We review dissolution proceedings de novo. *In re Marriage of McDermott*, 827 N.W.2d 671, 676 (Iowa 2013). "We give weight to the findings of the district court, particularly concerning the credibility of witnesses; however, those findings are not binding upon us." *Id.* We will disturb the district court's "ruling only when there has been a failure to do equity." *In re Marriage of Schriner*, 695 N.W.2d 493, 496 (Iowa 2005) (quoting *In re Marriage of Romanelli*, 570 N.W.2d 761, 763 (Iowa 1997)).

## III.    Child Support

We calculate a child support obligation using the child support guidelines. *See* Iowa Code § 598.21 (2017); *see also* Iowa Ct. R. 9.2; *In re Marriage of Erpelding*, 917 N.W.2d 235, 245 (Iowa 2018). "The purpose of the guidelines is to provide for the best interests of the children by recognizing the duty of both parents to provide adequate support for their children in proportion to their respective incomes." Iowa Ct. R. 9.3(1). To calculate the obligation, we begin by finding the parties' gross incomes. Iowa Ct. R. 9.14. A party's gross income is their

"reasonably expected income from all sources." Iowa Ct. R. 9.5(1)(a). We must determine gross "income from the most reliable evidence presented." *In re Marriage of Powell*, 474 N.W.2d 531, 534 (Iowa 1991).

Charles does not appeal the trial court's finding that his gross annual income includes $42,220.00 from his wages as a service technician and $12,200.00 from his service in the Army Reserves. However, he raises multiple issues with the court's finding that his income includes an untaxed $30,000.00 from farming.

Charles claims he earns no net income from farming, but he offers no credible explanation for why he cannot earn a net income from farming other than his testimony that his farm income is "negative" and "[i]t'll be even worse" in the near future. The trial court explicitly found him not credible on his assertion of having no farm income. The court concluded that "he was attempting to obfuscate his farm assets and income" while testifying, based in part on the following testimony:

> Q. How many acres do you farm? A. How many acres do I farm?
> Q. Uh-huh. A. That's pretty vague.
> Q. Well, how many acres of corn are in the field right now? A. Currently? Together or separate?
> Q. Well, that you have an interest in, whether you own it, whether you own it on halves, or whether it's part of the trust that you are the trustee for. A. I have approximately—it should be stipulated.
> Q. You would agree you are the sole trustee of that hundred acres or so? A. I am a trustee. My mother would be "co."
> Q. There's different trusts that your father's will created, right? A. Correct.
> Q. And for at least the east hundred acres, that was given to you, as trustee? Do you agree with that? A. Say again. East hundred?
> . . . .

Q. [The will says] you, as trustee, will "pay the net income to Charles Leff in convenient installments;" would you agree with that? A. Yes.

Q. To date, you haven't received any installments; is that right? A. As of what date?

Q. Today, here. I can rephrase. Have you received any money from the trust that you manage? A. So, you're saying that if I have received anything from the trust. It should be stated—that was in the exhibits that were submitted to you already.

Q. I guess I'm asking for you to tell the court, have you written yourself a check from the trust. A. No, not written myself a check from the trust. No.

Q. Do you anticipate that the trust is going to have money at the end of the year, after the crop is harvested? A. It depends if the crop is harvested.

Q. Do you remember what the value of that real estate was, that's your father's estate? A. Which piece?

Q. The piece that you serve as trustee for. A. The value?

Q. Yes. A. No, I do not have an idea of the value.

Q. If I told you that the report and inventory filed listed a value of $873,000 for that piece of real estate, does that sound accurate? A. Not without validating it. I could not tell you.

We give weight to this credibility determination and share the trial court's view that Charles's claim of no farm income lacked credibility. He is entitled to the income from 175 acres of farmland as either owner or trust beneficiary. We agree with the court that it is both equitable and in the children's best interests to expect him to earn a net income from his significant farm assets.

In support of his claim that his farm income is zero, Charles makes a number of arguments. First, Charles argues the court erred by using a five-year average of his farm income rather than a three-year average as urged by Charles. At oral argument, Charles claimed great surprise at the court's use of the five-year average. There is no basis for the claim of surprise. The court admitted the parties' tax returns for all five years (2013 through 2017) as exhibits without objection. To the extent he argues the court should not have admitted the returns for years 2013

and 2014, Charles has not preserved that issue for our review. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal."). He cannot claim surprise the court considered evidence admitted into the record. Additionally, Charles should not have been surprised at the court considering a five-year average. "[W]hen a parent's income is subject to substantial fluctuations, it may be necessary for the court to average the parent's income over a *reasonable period*" to determine the parent's income for support. *In re Marriage of Knickerbocker*, 601 N.W.2d 48, 52 (Iowa 1999) (emphasis added). Contrary to Charles's argument, the reasonable period used to calculate average annual income varies according to the equities of each case. *See, e.g.*, *In re Marriage of Drake*, No. 18-1724, 2019 WL 2872327, at *3 (Iowa Ct. App. July 3, 2019) (using a five-year average of farm income); *In re Marriage of Cossel*, 487 N.W.2d 679, 683 (Iowa Ct. App. 1992) (using a three-year average of farm income); *In re Marriage of Hoag*, 380 N.W.2d 8, 10 (Iowa Ct. App. 1985) (using a five-year average of farm income). Here, the past five years include good years and bad years for Charles's farm income. Other than his testimony about expecting poor farm income in the near future, he presented no evidence for why the past three years better represent his farm income than the past five years. We agree with the trial court that considering an average of the past five years is a better representation of his farm income than an average of the past three years as proposed by Charles.

Second, Charles argues that alleged gifts of grain to him from his mother, which he sold and reported as income for tax purposes, should not be considered

as part of his income for support. The record contains little information about these gifts other than Charles's testimony and prepared exhibits claiming the gifts in 2015 and 2016. The court impliedly expressed skepticism of these claimed gifts by repeatedly referring to them as "alleged" gifts, but essentially concluded that, even if the gifts took place, the transfers of grain were done "to allow Charles to take full advantage of deductions while minimizing his mother's income." We note the record shows closeness between Charles and his mother and their farming operations, and Charles has a history of claiming large deductions from his farm income. Gross income for support purposes is generally the same as the "total taxable" income reported for tax purposes. *See In re Marriage of McKamey*, 522 N.W.2d 95, 98 (Iowa Ct. App. 1994). Charles reported the proceeds from these gifts as taxable income, and the record supports a finding that the gifts are reasonably expected to continue in the future as he takes full advantage of his available tax deductions. Thus, we find that, to the extent gifting took place, these gifts were properly included in his income.

Third, Charles argues the record regarding trust income is insufficient to calculate any income. We agree the record is limited as to the trust, but we calculate income using "the most reliable evidence presented." *Powell*, 474 N.W.2d at 534. The will from Charles's father explicitly entitles him to income from the 120 acres of farmland in the trust, and he presented no evidence suggesting the trust will not produce income for him. Thus, we agree with including trust income as part of his gross income for support.

Fourth, Charles concedes we should add his section 179 deductions back to his income for support purposes. While Charles does not advance an argument

on this issue, we note his concession and specifically address his section 179 deductions. Our supreme court has decided section 179 deductions should be added back to income for support purposes; however, "the amount of depreciation, if any, to be considered in determining the availability of net income for the purposes of alimony and support awards is best left to the court's discretion." *Gaer*, 476 N.W.2d at 328 (quoting *Stoner v. Stoner*, 307 A.2d 146, 152 (Conn. 1972)). Previous decisions have deducted from gross income an amount equal to straight-line depreciation rather than the section 179 deduction. *See id.* at 329; *see also McDermott*, 827 N.W.2d at 685; *Knickerbocker*, 601 N.W.2d at 52. The record here does not contain enough information to convert Charles's section 179 deduction into straight-line depreciation, and Charles does not request any deduction from income in lieu of his section 179 deductions.[3] We also note Charles claimed other substantial deductions from farm income—including straight-line depreciation—in each of the five years in the record. Thus, we accept Charles's

---

[3] At oral argument, Charles urged us to deduct straight-line depreciation in calculating his farm income. "Under the straight line method, the cost of the property, less its estimated salvage value, is deducted in equal amounts over the period of its remaining estimated useful life." *Knickerbocker*, 601 N.W.2d at 51 n.1. Besides the fact that we do not have sufficient information to make such a calculation, Charles has not preserved error on this issue. The trial court did not deduct straight-line depreciation from farm revenue in arriving at Charles's farm income. Although Charles filed a motion under Iowa Rule of Civil Procedure 1.904(2), the motion did not raise this issue. Therefore, error was not preserved on this issue. *See Bank of America, N.A. v. Schulte*, 843 N.W.2d 876, 883–84 (Iowa 2014) (holding that to preserve error on even a properly raised issue on which the district court failed to rule, the party who raised the issue must file a motion requesting a ruling in order to preserve error for appeal). Additionally, Charles did not raise this issue in his brief. Charles raised this issue for the first time in his reply brief. The straight-line calculations in his brief are not supported by the record before us, and we do not consider arguments raised for the first time in a reply brief. *See Young v. Gregg*, 480 N.W.2d 75, 78 (Iowa 1992) ("[W]e have long held that an issue cannot be asserted for the first time in a reply brief.").

concession and agree with adding his section 179 deduction into his income without providing an additional deduction for depreciation.

Before proceeding to Charles's final argument, involving taxation of his farm income, it is worth noting additional evidence in the record that supports the trial court's conclusion that Charles has farm income of $30,000.00 per year for purposes of calculating child support. One such item of evidence is that Charles, in submitting an application for financing to John Deere Financial in 2016 or 2017, made representations to the lender that his gross income was $98,250.00. It is not clear whether this figure included Carrie's income. Even if it did, after deducting Carrie's income of $15,000.00, it would still leave Charles with having admitted that his annual income is $83,250.00, which is very close to the income figure arrived at by the trial court. This evidence further supports the trial court's findings regarding Charles's farm income.

Finally, Charles argues any farm income should be treated as taxable for support purposes. The trial court determined he receives $30,000.00 in annual farm income, which is roughly equivalent to his average section 179 deduction over the past five years. He agreed to add the section 179 deduction back into his income for support, and we do so without providing an alternative deduction for depreciation. This farm income would be taxable for tax purposes without the deduction, and we see no reason to treat it as untaxable for support purposes. Thus, we agree with Charles's final argument and find his $30,000.00 of annual farm income is taxable for support purposes. We otherwise affirm the district court's determination of his income for support.

### IV.     Tax Dependency Allocation

Charles argues he should receive the right to claim all three children as dependents on his tax returns.  Generally, "the parent given primary physical care of the child is entitled to claim the child as a tax exemption."  *In re Marriage of Okland*, 699 N.W.2d 260, 269 (Iowa 2005).  "However, courts have the authority to award tax exemptions to the noncustodial parent 'to achieve an equitable resolution of the economic issues presented.'"  *Id.* (quoting *In re Marriage of Rolek*, 555 N.W.2d 675, 679 (Iowa 1996)).

Although Carrie has physical care of all three children, the trial court awarded her the right to claim only the middle child as a dependent, with the right to claim the other two children awarded to Charles.  Charles claims his higher income justifies awarding all three exemptions to him.  Despite his assertion, he does not provide evidence that awarding him all three exemptions would be more beneficial.  We also note his tax returns show he routinely uses various deductions to reduce his taxable farm income to near zero.  For those reasons, we find no error in the court's division of the right to claim the children as dependents on the parties' respective tax returns based on the child support calculations originally made by the court.

While the court did not err on this issue, we recognize that the child support calculation originally made by the trial court may have influenced the court's decision with regard to allocation of dependency exemptions.  Since the case is being remanded to calculate the proper amount of child support after taxing Charles's $30,000.00 of farm income and the new child support amount may change the court's mind with regard to equitable allocation of dependency

exemptions, we find it appropriate to remand on that issue as well. We express no opinion on whether the allocation of dependency exemptions should be changed. We merely remand to direct the court to reconsider that issue after recalculation of the child support amount. In reconsidering this issue, it will be within the trial court's discretion whether to address the issue based on the evidence already presented, have the parties submit worksheets or affidavits, or conduct a hearing on the issue. The parties are not permitted to relitigate the issue of their income. On remand, consistent with the trial court's findings and this ruling, calculations shall be based on Carrie having annual taxable income of $15,000.00 and Charles having annual taxable income of $42,220.00 from his wages as a service technician, $12,200.00 from his service in the Army Reserves, and $30,000.00 from farming (a total of $84,440.00 for Charles). On the issue of allocation of dependency exemptions after recalculation of child support, the trial court is to consider how allocation of dependency exemptions would affect the parties' respective tax liabilities and the corresponding amount of child support given the parties' respective incomes. We also encourage the trial court to consider the implications of the Tax Cuts and Jobs Act of 2017 in allocating the exemptions.

### V. Appellate Attorney Fees

Carrie requests appellate attorney fees. Appellate attorney fees are within the discretion of the appellate court. *In re Marriage of Ask*, 551 N.W.2d 643, 646 (Iowa 1996). "In determining whether to award appellate attorney fees, we consider the needs of the party making the request, the ability of the other party to pay, and whether the party making the request was obligated to defend the decision of the trial court on appeal." *In re Marriage of Hoffman*, 891 N.W.2d 849,

852 (Iowa Ct. App. 2016) (quoting *In re Marriage of Kurtt*, 561 N.W.2d 385, 389 (Iowa Ct. App. 1997)). After considering all factors, including the fact that Charles was successful in challenging portions of the trial court's ruling, we decline to award appellate attorney fees.

## VI. Conclusion

We find Charles's farm income is $30,000.00 and the farm income is taxable for support purposes. We reverse the district court as to that issue. We otherwise affirm the district court's determination of Charles's income, and we remand for the purpose of calculating his support obligation using $84,440.00 in taxable gross annual income and entering a corresponding support order. Such order should continue to include an appropriate credit for extraordinary visitation. We also remand for reconsideration of the issue of allocation of the parties' rights to claim the children as dependents on their tax returns, as the determination of that issue may be influenced by the child support calculation. We decline to award appellate attorney fees. Costs are to be divided equally between the parties. Pending a ruling on remand, we order child support to be paid as set by the dissolution decree. We do not retain jurisdiction.

**AFFIRMED AS MODIFIED AND REMANDED.**