HENRY McCLAIN v. CARL ROBINSON, WARDEN,
CONNECTICUT CORRECTIONAL INSTITUTION,
SOMERS
(10167)

SPEZIALE, C. J., PETERS, PARSKEY, SHEA and GRILLO, Js.

Argued January 4—decision released April 5, 1983

*Douglas Nash,* assistant public defender, with whom, on the brief, were *Jerrold H. Barnett,* public defender, and *Ellen B. Lubell,* assistant public defender, for the appellant (plaintiff).

*C. Robert Satti,* state's attorney, for the appellee (defendant).

GRILLO, J. This appeal from the judgment of the trial court granting a motion to quash a writ of habeas corpus raises the following issue: whether, in 1973, a writ of habeas corpus was an appropriate procedural vehicle to test the legality of a criminal contempt citation.

The facts are not in dispute. On June 12, 1973, the plaintiff appeared without counsel before the New London Superior Court to be heard on a

motion filed by him concerning the appeal of his previous criminal conviction.[1] During the course of this hearing, the plaintiff and the court engaged in a colloquy which culminated in the court, *Naruk, J.,* finding the plaintiff in contempt.[2] Upon adjudging the plaintiff in contempt, the court imposed a sentence of thirty days, to be served consecutive to the prison term resulting from the plaintiff's prior criminal conviction. After an unsuccessful appeal to this court concerning the underlying criminal conviction,[3] the plaintiff was incarcerated at the Connecticut Correctional Institution in Somers.

On May 21, 1979, the plaintiff filed an amended petition for writ of habeas corpus, wherein he claimed, inter alia, that his conduct before Judge

---

[1] The plaintiff's motion was entitled "Affidavit in Support Of Motion To Vacate Judgment—Writ of Error."

[2] "The Accused: I've already asked you a question and haven't got an answer on that.

"The Court: Mr. McClain, you keep this up and I will hold you in contempt.

"The Accused: And, your Honor, if I may say, the petitioner may hold the court beneath contempt.

"The Court: Do you want to repeat that?

"The Accused: Will you have the stenographer read it back please.

"The Court: Read it, Miss Reporter.

(The statement referred to above was read by the reporter.)

"The Court: You wish that statement to stand?

"The Accused: Does your Honor wish his statement to stand?

"The Court: Mr. McClain, I am asking you a question. Do you want to leave that statement on the record? I am giving you an opportunity to withdraw it.

"The Accused: The petitioner would like for his statement to stand.

"The Court: The court therefore finds you in contempt, and in addition to the sentence which you are presently serving, will herewith sentence you for contempt in open court to an additional thirty days in jail."

[3] *State* v. *McClain*, 171 Conn. 293, 370 A.2d 928 (1976). Judge Naruk's contempt citation was not raised as an issue in that appeal.

Naruk was not contemptuous and that therefore the finding of contempt and resulting sentence should be vacated. On May 23, 1979, the state moved to quash the petition on the ground that habeas corpus is not the proper proceeding in which to test the legality of a criminal contempt citation.

After a hearing on the state's motion to quash, the trial court, *B. O'Neill, J.,* granted the motion on October 29, 1979. Construing the law as it existed in 1973, a stipulation agreed upon by the parties, the court concluded that a writ of error is the sole method by which the plaintiff may contest a judgment of criminal contempt committed in the presence of the court.[4] Accordingly, the court ruled that habeas corpus is unavailable to the plaintiff as a vehicle to contest a summary criminal contempt citation. From this judgment, the plaintiff appeals. We find no error.

Clear authority to the contrary notwithstanding; *Moore* v. *State,* 186 Conn. 256, 257, 440 A.2d 969 (1982); *Whiteside* v. *State,* 148 Conn. 77, 78–79, 167 A.2d 450 (1961); *State* v. *Melechinsky,* 36 Conn. Sup. 547, 549, 419 A.2d 900 (1980); the petitioner argues that a writ of error is not the sole method of review of a summary criminal contempt proceeding. Such an argument misconstrues the distinction between summary criminal contempt and civil contempt, as well as the disparate functions of a writ of error and a writ of habeas corpus.

Criminal contempt, as distinguished from civil contempt, "is conduct that is directed against the

---

[4] Although the court construed the law as it existed in 1973, it was not required to do so as the law governing appellate review of summary criminal contempt adjudications has not changed since 1973.

dignity and authority of the court." *Board of Education* v. *Shelton Education Assn.*, 173 Conn. 81, 85, 376 A.2d 1080 (1977). Sanctions are imposed in order to vindicate that authority. Id. Where contemptuous conduct is committed in the presence of the court, punishment may be announced summarily. *State* v. *Melechinsky,* supra, 549; see General Statutes § 51-33.[5] Under such circumstances, " 'no witnesses are required in proof of the contempt, and the court has inherent power to impose punishment on its own knowledge and of its own motion without formal presentation or hearing of the person adjudged in contempt . . . .' *Whiteside* v. *State,* supra, 78." *Moore* v. *State,* supra, 259.

Civil contempt, conversely, is conduct "directed against some right of the opposing party . . . ." *Tobey* v. *Tobey,* 165 Conn. 742, 745, 345 A.2d 21 (1974). " '[A] contempt is considered civil when the punishment is wholly remedial, serves only the purposes of the complainant, and is not intended as a deterrent to offenses against the public.' *McCrone* v. *United States,* 307 U.S. 61, 64, 59 S. Ct. 685, 83 L. Ed. 1108 [1939]." *McTigue* v. *New London Education Assn.,* 164 Conn. 348, 352, 321 A.2d 462 (1973). Unlike a summary criminal contempt proceeding, civil contempt is initiated by the opposing party, who seeks vindication of a claimed civil right. *Stoner* v. *Stoner,* 163 Conn. 345, 359, 307 A.2d 146 (1972).

---

[5] General Statutes § 51-33 states: "PUNISHMENT FOR CONTEMPT OF COURT. Any court may punish by fine and imprisonment any person who in its presence behaves contemptuously or in a disorderly manner; but no court may impose a greater fine than one hundred dollars or a longer term of imprisonment than six months or both." This statute was in effect without material change in 1973. General Statutes (Rev. to 1972) § 51-33.

Although a contemner may seek appellate review of a criminal contempt adjudication, our inquiry "is limited to a determination of the jurisdiction of the court below." *Moore* v. *State,* supra, 257. "Subsumed in this inquiry are three questions, namely, (1) whether the designated conduct is legally susceptible of constituting a contempt . . . (2) whether the punishment imposed was authorized by law . . . and (3) whether the judicial authority was qualified to conduct the hearing. . . ." (Citations omitted.) Id. "Where the contemptuous conduct occurs outside of the presence of the court, and the court acts on the motion of one of the parties, the contempt judgment is reviewable by appeal; *Leslie* v. *Leslie,* 174 Conn. 399, 402, 389 A.2d 747 (1978); *Stoner* v. *Stoner,* 163 Conn. 345, 359, 307 A.2d 146 (1972); and this is true even if the contempt sanctions imposed are criminal in nature." *State* v. *Melechinsky,* supra; see *Board of Education* v. *Shelton Education Assn.,* supra, 86; *McTigue* v. *New London Education Assn.,* supra.

Where, however, a contemner seeks review of a summary criminal contempt adjudication, such review "has been on a more restricted procedural basis . . . ." *State* v. *Melechinsky,* supra. The reason for this limited appellate review lies in the unique character of summary criminal contempt proceedings. "[S]uch adjudications, if they may be called such, are not judgments or awards in the nature of judgments. They are punishments imposed for offenses against the court as an organ of public justice, to enable it to maintain its dignity and duly perform its functions. The power to so punish is essential to a court to enable it to administer justice. Without it a court would be helpless

against persons disposed to obstruct, delay, or thwart its proceedings. The power has consequently been held to be inherent in courts . . . ." *Goodhart* v. *State,* 84 Conn. 60, 62–63, 78 A. 853 (1911).

The ancient remedy of writ of error, "formerly the only method . . . of carrying up a cause from an inferior to a higher court for the revision of questions of law"; *State* v. *Caplan,* 85 Conn. 618, 622, 84 A. 280 (1912); provides a narrow basis for appellate review. It is settled law in this jurisdiction that the scope of appellate review on a writ of error is limited solely to matters appearing as of record. E.g., *State* v. *Assuntino,* 180 Conn. 345, 347, 429 A.2d 900 (1980); *Reilly* v. *State,* 119 Conn. 217, 223, 175 A. 582 (1934). "A writ of error may not assign as error, nor may we review on a writ of error, allegations concerning the conduct of the trial court that contradict the record . . . or findings of fact as distinguished from conclusions of law." (Citations omitted.) *State* v. *Assuntino,* supra. "Matters occurring at the trial, as rulings on evidence, claimed errors in the charge and the like . . . have no place now in a writ of error . . . ." Maltbie, Conn. App. Proc. § 239

Habeas corpus, as a remedy for illegal detention, is a special and extraordinary writ. *Reed* v. *Reincke,* 155 Conn. 591, 594, 236 A.2d 909 (1967). Although "[t]he usual question involved in the proceeding is one of jurisdiction"; *Wojculewicz* v. *Cummings,* 143 Conn. 624, 627, 124 A.2d 886 (1956); inquiry as to the claim of lack of jurisdiction ordinarily requires the presentation of evidence, whereas the question of jurisdiction pursuant to a writ of error is confined solely to matters appearing as of record. See *Arey* v. *Warden,* 187 Conn.

324, 331–32, 445 A.2d 916 (1982); General Statutes § 52-470. Thus, while a habeas court may not "review irregularities or errors of procedure or questions as to the sufficiency of evidence"; *Wojculewicz* v. *Cummings,* supra, 628; it may, and indeed under appropriate circumstances it must, consider relevant and material evidence beyond that contained in the record. See *Jordan* v. *Estelle,* 594 F.2d 144, 145–46 (5th Cir. 1979).

It is the final nature of a summary criminal contempt adjudication, and the correspondingly narrow scope of appellate review available on a writ of error, which provides the basis for the established precedent that the writ is the sole means by which a contemner may contest such an adjudication. "A court exercises considerable discretion in dealing with contemptuous conduct occurring in its presence, and its summary adjudication is accorded a presumption of finality." *State* v. *Melechinsky,* supra. "From necessity the court must be its own judge of contempts committed within its presence." *Goodhart* v. *State,* supra. "[T]he punishment, to be effectual, must be immediate and peremptory, and not subject to suspension at the mere will of the offender." *Tyler* v. *Hamersley,* 44 Conn. 393, 412, 26 A. 471 (1877). To subject a summary criminal contempt citation to the full multitude of claims of error ordinarily available on appellate review, or to jurisdictional challenges beyond those appearing as of record, would frustrate the inherent power of a court, as an organ of public justice, to punish persons disposed to obstruct, delay or thwart it. See *State* v. *Jackson,* 147 Conn. 167, 169, 158 A.2d 166 (1960). Only "if it appears from the record that the court did not have jurisdiction, as, for example, that it had no

authority to impose the punishment inflicted, or that the act for which the punishment was inflicted could not constitute a contempt, [may] the action of the court . . . be set aside on a writ of error."[6] *Goodhart* v. *State,* supra, 63.

There is no error.

In this opinion the other judges concurred.

---

[6] We reject the plaintiff's additional claim that even if he had brought a timely writ of error in 1973, he would not have obtained a hearing on the merits of the summary contempt citation because of the lack of a record. It is true that "[w]hen the contempt is in the presence of the court, there is no written charge or complaint, and therefore there is no opportunity for the one who is punished to protect his rights unless the facts found are spread upon the judgment file. Hence, it is essential that the jurisdiction of the court appear on the face of the judgment." *State* v. *Jackson,* 147 Conn. 167, 170, 158 A.2d 166 (1960). In 1973, however, Practice Book, 1963, § 260 (now § 327) stated: "Each court shall keep a record of its proceedings and cause the facts on which it found its final judgments and decrees to appear on the record; and any such finding if requested by any party shall specially set forth such facts." Moreover, Practice Book, 1963, § 265 (now § 333) stated in pertinent part: "A special finding of facts under Sec. 260 should rarely be requested or made but when made it becomes a part of the record with the same effect as though the facts were included in the judgment and claims of error may be based upon it as appearing of record. If the special finding is insufficient to support the judgment, the error is one upon the record. The purpose of a special finding is to place upon the record the material facts upon which the judgment is based . . . ." In view of the foregoing, it is apparent that the plaintiff could have secured an adequate record upon which to contest, by writ of error, the jurisdiction of the trial court. See *Brown* v. *Cray,* 88 Conn. 141, 144, 89 A. 1123 (1914).

We further reject the plaintiff's claim that only with respect to citations issuing from a municipal court is the writ of error the sole means of reviewing a criminal contempt citation. Our cases make no such distinction.