In re Afa ANOAI a/k/a Samoan No. 1, Debtor.

**TITAN ENTERPRISES INTERNATIONAL, LTD., Movant,**

v.

**Afa ANOAI a/k/a Samoan No. 1, Respondent.**

In re Samuel ANOAI a/k/a Samoan No. 3, Debtor.

**TITAN ENTERPRISES INTERNATIONAL, LTD., Movant,**

v.

**Samuel ANOAI a/k/a Samoan No. 3, Respondent.**

Bankruptcy Nos. 5–85–00129, 5–85–00130.

Motion Nos. 5–85–0125–M, 5–85–0124–M.

United States Bankruptcy Court, D. Connecticut.

June 12, 1986.

---

James Berman, Zeisler & Zeisler, P.C., Bridgeport, Conn., for debtors/respondents.

Robert N. Michaelson, Whitman & Ransom, New York City, James A. Fulton, Whitman & Ransom, Greenwich, Conn., for movant.

## MEMORANDUM OF DECISION

ALAN H.W. SHIFF, Bankruptcy Judge.

Titan Enterprises International, Ltd. ("Titan") moves in each of the above cases for relief from the automatic stay, 11 U.S.C. § 362(a), "to permit it to pursue contempt proceedings against the debtor in the New Haven Superior Court."[1] It is noted at the outset that although neither Titan's motions for relief nor the stipulation of the parties specify that Titan seeks relief from the automatic stay so that it may commence *criminal* contempt proceedings against the debtors in state court, Titan has throughout these proceedings identified that intention,[2] and this decision is written in that context. It is also noted that Titan seeks relief from the automatic stay as an alternate remedy in the event that this Court determines that the stay applies to the commencement of criminal contempt actions in state court.[3] It is therefore necessary to first determine whether the automatic stay applies.

The parties have stipulated and this court finds as follows:[4]

1. Titan Enterprises International, Ltd. ("Titan") is a promoter of live, professional wrestling exhibitions.

2. Samuel and Afa Anoai (the "Debtors") are professional wrestlers.

3. On January 3, 1984, Titan and the Debtors executed Booker's Agreements ("Agreements"), copies of which are attached hereto, which stated in part that Titan was to be the Debtor's exclusive booker for live wrestling performances and other related activities throughout the world.

4. On February 28, 1985, Titan sought and obtained an ex-parte temporary injunction ("Injunction") in the Superior Court, State of Connecticut ("State Court") that restrained the Debtors from:

(a) participating in wrestling exhibitions scheduled for March, 1985 in Kuwait City, Kuwait which were organized by a promoter other than Titan; or

(b) participating in any competitive tour not booked or promoted by Titan

---

1. Statement of Issues filed by Titan June 27, 1985 at 1.

2. See Statement of Issues filed by Titan, June 27, 1985; Memorandum of Law filed by Titan, August 2, 1985; Reply Memorandum of Law filed by debtors, August 28, 1985.

3. See Memorandum of Law filed by Titan, August 2, 1985; Reply Memorandum of Law filed by debtors, August 28, 1985.

4. Stipulation of the parties dated November 13, 1985.

during the remaining term of the Agreements.

5. The Debtors were duly served with copies of the Injunction.

6. On March 5, 1985, Afa Anoai filed a petition under Chapter 11 of the Bankruptcy Code and Samuel Anoai filed a petition under Chapter 7 of the Bankruptcy Code, and filed with the State Court a Notice of Stay pursuant to 11 U.S.C. § 362 which was served on Titan.

7. Shortly thereafter, the Debtors traveled to Kuwait and participated in wrestling exhibitions organized by a promoter other than Titan.

8. Samuel Anoai permitted his Agreement to be rejected by operation of law when he failed to assume it within 60 days following the filing of his Chapter 7 petition.

9. After Afa Anoai returned from the Kuwait Club Exhibitions, this court, upon proper motion under 11 U.S.C. § 365 entered an order allowing Afa Anoai to reject his Agreement with Titan which by law he had an absolute right to reject. That motion had no opposition.

10. Subsequent to the filing of the Debtor's petitions, Titan moved this court pursuant to 11 U.S.C. § 362(d) for an order modifying the automatic stay imposed under 11 U.S.C. § 362(a) in order to commence contempt proceedings against the Debtors in the State Court for violating the Injunction.

11. This stipulation is entered into for the limited purpose of supplying this court with facts sufficient to permit it to render a decision on Titan's motion for modification of the automatic stay and does not constitute an admission by either party to be used in any other court of law or in any other proceeding in this court.

Code § 362(b)(1) provides in pertinent part:

The filing of a petition under section 301 ... of this title ... does not operate as a stay—

(1) under subsection (a) of this section, of the commencement or continu-

ation of a criminal action or proceeding against the debtor.

Under Connecticut case law, "[c]riminal contempt, as distinguished from civil contempt, 'is conduct that is directed against the dignity and authority of the court.' Sanctions are imposed in order to vindicate that authority." *McClain v. Robinson*, 189 Conn. 663, 665–66, 457 A.2d 1072 (1983) (citation omitted); Section 984, Connecticut Superior Court Rules (P.B.1963, Sec. 2396). The question then is whether the criminal contempt proceedings proposed by Titan are included within the scope of Code § 362(b)(1).

In *United States v. Troxler Hosiery Co., Inc.*, 41 B.R. 457 (M.D.N.C.1984), Troxler arranged for the sale and removal of garments in violation of an order of a judge of the United States Court of Appeals for the Fourth Circuit. Criminal contempt proceedings were instituted against Troxler in the Fourth Circuit, and Troxler was found guilty of criminal contempt and fined. Troxler thereupon filed a petition under Chapter 11 of the Bankruptcy Code, and the government filed an adversary proceeding, seeking a declaratory judgment that the automatic stay did not apply to its attempt to collect the fine imposed as a criminal contempt sanction. The Bankruptcy Court held that the contempt proceedings were in essence an attempt to collect a money judgment which is stayed by § 362(a)(2). In reversing the Bankruptcy Court, District Judge Ward ruled:

It is undisputed that the contempt proceedings against Troxler were criminal in nature. Sentencing of a criminal defendant, whether it be imprisonment or imposition of a fine, fixes and declares the legal consequences of predetermined guilt. *United States v. Henry*, 709 F.2d 298, 310 (5th Cir.1983). A criminal sentence without accompanying authority to ensure service by the defendant as ordered would be meaningless. Action by the government to enforce the terms of the sentence are plainly a continuation of the entire criminal proceeding.... Unlike the restrictions found in sections 362(b)(4) & (5), Congress did not, in sec-

tion 362(b)(1), limit the scope of the criminal proceedings exception to the automatic stay. Precise application of section 352(b)(1) excepts criminal proceedings from all of the various automatic stays, including the otherwise operative stay of judgment enforcement proceedings against the debtor or property of the estate of 11 U.S.C. § 362(a)(2). *See* 2 Bankruptcy L.Ed. Summary § 6:135 at 151 (1981) (if action or proceeding is criminal, it is insulated from all of the automatic stay provisions).

*Id.* at 460–61.

The debtors attempt to distinguish *Troxler* on the basis that that decision dealt with a prepetition conviction of criminal contempt, whereas the debtors conduct followed the filing of their petitions and the concomitant application of the automatic stay. Thus, the debtors argue there was no crime so there can be no criminal proceeding exception to the stay under § 362(b)(1).

The question, however, is not whether the post petition conduct of the debtors was contumacious. That must be left to the state court. The question here is whether a proceeding for the purpose of determining if criminal contempt was committed and punishing any such conduct is a criminal proceeding? It is. Section 986 of the Connecticut Superior Court Rules (P.B. 1963, Sec. 2397) provides in relevant part, "[t]he judicial authority may punish [for criminal contempt] by fine or imprisonment or both." And a proceeding in which guilt because of contumacious conduct is considered and, if found, punished is a criminal proceeding, just as is any other proceeding to determine whether a person is guilty as charged.

For the purposes of the issues raised here, *Troxler* is indistinguishable and persuasive. Indeed, if an action to enforce the terms of a sentence imposing a sanction for criminal contempt is excepted from the automatic stay, it follows *a fortiori* that the commencement of a proceeding from which

such a sanction might result is also excepted.[5]

If Titan were attempting to utilize a state court proceeding in an effort to collect a prepetition debt arising from the breach of its agreements with the debtors or to do any of the other acts stayed by § 362(a), a different result might be required. As the court held in *In re Holder*, 26 B.R. 789, 791 (Bankr.M.D.Tenn.1982):

[A] federal court's power to interfere with state criminal proceedings is narrowly circumscribed and such interference is only justified when the evidence clearly and convincingly reflects that the criminal proceeding is primarily intended to collect a civil debt in contravention of the automatic stay or discharge provisions of the Bankruptcy Code.

*See also In re Caldwell*, 5 B.R. 740, 6 B.C.D. 892 (Bankr.W.D.Va.1980) (creditor's efforts found "not directed at the enforcement of criminal penalties for crime in the protection of society, but ... to enforce payment of their claim by criminal sanctions ...").

The facts here, however, are clearly distinguishable from those proceedings where the proposed state court action is little more than an attempt to collect a prepetition debt. As noted, Titan seeks criminal not civil contempt sanctions against the debtors. Unlike civil contempt sanctions which serve a remedial purpose by either coercing a respondent into compliance with the court's order or compensating the complainant for losses sustained, *see In re Lohnes*, 26 B.R. 593, 596 (Bankr.D.Conn. 1983); *citing, McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191, 69 S.Ct. 497, 499, 93 L.Ed. 599 (1949), "[i]n criminal contempt the sanction is punitive in order to vindicate the authority of the court." *Board of Education v. Shelton Education Association*, 173 Conn. 81, 85, 376 A.2d 1080 (1977), *citing, Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 441, 31 S.Ct. 492, 498, 55 L.Ed. 797 (1911); *McClain v. Robinson, supra*, 189 Conn. at

5. The Bankruptcy Court Judge in *Troxler, supra*, 41 B.R. 459 n. 2, stated during the second round of oral argument that the § 362(b)(1) exception applied to procedure but not to collection.

665–6, 457 A.2d 1072. That Titan might derive some indirect benefit from the imposition of criminal contempt sanctions against the debtors does not require the elimination of the proposed criminal contempt proceedings from the scope of § 362(b)(1) where, as here, any state court order will be crafted to vindicate the authority of that court rather than enforce Titan's contract rights or remedies.

A person who has offended the authority of a court should answer in that court for such offense. Neither bankruptcy law nor policy requires or justifies interference with the criminal contempt proceedings of any court when the dignity of its orders is claimed to have been violated. I therefore conclude that the criminal contempt proceedings proposed by Titan are included within the scope of § 362(b)(1) and that the automatic stay does not apply to those proceedings. Accordingly, Titan's motions for relief from the automatic stay provided by Code § 362(a) are denied.