[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
In this action the petitioner seeks habeas corpus relief based on the following claims: (1) ineffective assistance of counsel; (2) conflict of interest; (3) an incorrect mittimus and total effective sentence; (4) state interference; (5) breach of attorney client confidentiality; (6) double jeopardy, and; (7) a sentence which exceeded the plea agreement. At the close of the hearing on the petition, the petitioner withdrew his claim of state interference.
On October 20, 1992, in Docket Number MV 9-371431, the petitioner was convicted by guilty plea of the offense of Driving Under the Influence in violation of Connecticut General Statutes 14-227a in proceedings in the Middlesex Judicial District Superior Court. This offense related to operation by the petitioner on April 21, 1991. The petitioner also pled guilty to a Part B of this information charging him with having previously been convicted of the same offense on July 17, 1990. Findings of guilt were made by the court upon acceptance of both pleas.
Also on October 20, 1992, in Docket Number MV 9-374353, the CT Page 11359 petitioner filed a written plea of nolo contendere to the criminal charges of Manslaughter in the Second Degree with a Motor Vehicle in violation of C.G.S. 53a-56b and Assault in the Second Degree with a Motor Vehicle in violation of C.G.S.53a-60d. Because these offenses involved criminal behavior while operating a motor vehicle they also carried a criminal docket number, CR 9-121325. This file related to operation by the petitioner on October 14, 1991 resulting in the death of one person and serious physical injury to another. The court made a finding of guilt on these two charges after accepting the petitioner's written nolo contendere plea.
On December 8, 1992 the petitioner was sentenced by the court to an effective sentence of eleven years suspended after seven and one half years to serve with three years of probation. He was sentenced to confinement of ten years suspended after six and one half years on the manslaughter conviction and one year on the assault conviction, those sentences to be served consecutively. Additionally, he received a concurrent sentence of one year on the Driving Under the Influence conviction. As special conditions of probation the court ordered the petitioner not to operate a motor vehicle while on probation, to participate in alcohol education and counseling, to be subjected to random urinalysis, to have no alcohol-related arrests, and to perform five hundred hours of community service.
"Habeas corpus provides an extraordinary legal remedy for illegal detention; McClain v. Robinson 189 Conn. 663, 668 (1983); and should be available to those "`whom society has grievously wronged.'" Kuhlman v. Wilson, 477 U.S. 436, 447, 106 S.Ct. 2616,91 L.Ed.2d 364 (1986)." Ostolaza v. Warden, 26 Conn. App. 758
(1992). These standards illuminate the court's consideration of the petitioner's claims.
INEFFECTIVE ASSISTANCE OF COUNSEL
The petitioner claims that his counsel was ineffective for failing to adequately investigate his case and for his failure to file and pursue pretrial motions on his behalf. As a result, the petitioner claims, he was left with essentially no choice but to accept a plea agreement.
At the onset of the pretrial proceedings the petitioner was represented by private counsel who was permitted to withdraw. Subsequently, Attorney Christopher James of the Public Defender's CT Page 11360 Office was appointed to represent the petitioner. After Mr. James later withdrew, the court appointed Attorney Richard Kelly, also of the Public Defender's Officer to represent the petitioner. His claims of ineffective assistance are directed toward the actions of both public defenders.
To succeed in his claim of ineffective assistance of counsel, the petitioner must show that his attorneys' performance was not "reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law." State v. Clark, 170 Conn. 273, 283, cert. denied, 425 U.S. 962,96 S.Ct. 1748, 48 L.Ed.2d 208 (1976). The petitioner must also demonstrate that this lack of competency contributed to his conviction. State v. Clark, supra; Levine v. Manson, 195 Conn. 636,639, (1985); Summerville v. Warden, 29 Conn. App. 162
(1992). Connecticut has adopted a two-pronged test for ineffectiveness of counsel which requires a conclusive showing that (1) the attorney's performance was so deficient and the errors made by counsel were so egregious that the attorney was not functioning as counsel, and (2) there exists a reasonable probability that, but for counsel's professional efforts, the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); Johnson v. Commissioner, 218 Conn. 403, 424 (1991).
In this case, the petitioner's proof satisfies neither prong of the Strickland test. Evidence adduced at the habeas hearing demonstrated that in MV 9-371431 the State had evidence that on April 21, 1991, the petitioner was operating a motor vehicle erratically on a public highway in the State of Connecticut and that when he was apprehended he possessed a strong odor of alcohol and failed the field sobriety tests administered to him by the arresting officer. Additionally he was given two breath tests which revealed blood-alcohol levels of .19 and .20 respectively. In this matter the petitioner also pled guilty to a Part B of the information relating to a prior conviction for the same offense. The petitioner offered no evidence at the habeas hearing relating to the effectiveness of counsels' representation of him in this file. His attack, rather, is aimed at counsels' representation of him in MV 9-374353 (CR 9-121325). In this matter, during their pretrial representation of the petitioner, counsel was confronted with evidence from the State that on October 14, 1991 shortly before 10:00 pm, a witness observed the petitioner operating a motor vehicle southbound in the northbound lane of Route 9 in Haddam when he struck a northbound motor CT Page 11361 vehicle. The State had evidence that one passenger in that vehicle died of injuries sustained in the collision while another passenger sustained serious injuries. The State also had evidence that the petitioner was taken to the hospital where blood was taken from him and revealed a blood-alcohol level of .216. Finally, counsel had been provided written statements taken by the police from two individuals with whom the petitioner had visited shortly before the collision. These statements provided further evidence of the petitioner's intoxicated condition on the evening of the fatal collision. Robert Karpe's statement included an assertion that when he was with the petitioner earlier in the evening in question, "I have never seen him this drunk before or as obnoxious as he was acting. (I have known Robin for three and one half years and we sometimes party together)." Respondent's Exhibit A. Joann Longton, who was with Mr. Karpe, stated, in part, that when she was with the petitioner earlier in the evening, "I had never seen Robin E. Dodge this intoxicated before, ever." Elsewhere in her statement, Ms. Longton asserted, ". . . Robin was extremely intoxicated and he could hardly stand up for a short period of time." Respondent's Exhibit B.
The petitioner testified at the habeas hearing that his wife and a liquor store proprietor from whom he purchased beer would have testified that he did not appear intoxicated when they were with him earlier in the evening. He criticized counsel for not obtaining statements from them. "[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Summerville v. Warden, 29 Conn. App. 162 (1992). In this case, Attorney Kelly testified that he was informed by the State's Attorney that the petitioner's wife had told a police investigator that she had asked her husband in the late afternoon whether he had been drinking. With that backdrop and mindful of her relationship to the petitioner, Attorney Kelly determined that pursuing her as a witness on culpability would not be useful. As to the liquor store proprietor, Attorney Kelly determined that the self interest of a liquor store proprietor in saying that a customer who purchased liquor from her did not, at the time, appear to be intoxicated would negate any benefit of a CT Page 11362 statement from her. The court finds no fault in this exercise of professional reasoning and judgment.
The petitioner also claims that he asked his counsel to obtain evidence of other wrong way accidents on Route 9, and at the habeas hearing he presented documentation to demonstrate that other such accidents had, indeed, occurred on the same highway. The court finds reason in Attorney Kelly's view that the presentation of information about other accidents would have done nothing to mitigate the impact of the dynamics of the collision caused by this petitioner in the manner the State was prepared to prove it occurred.
The petitioner also claims that counsel should have filed and pursued pre-trial motions on his behalf. At the hearing he made specific note of a motion relating to his past criminal record as well as a motion directed toward the extraction of blood from him after the accident. As to the question of pretrial motions, evidence adduced at the habeas hearing demonstrated that the State was well aware of the issue of whether the results of the petitioner's blood-alcohol tests could be used against him at trial. He claims, nevertheless, that his counsel should have insisted on having the motion heard before trial so that he could have made a more informed decision as to whether or not to accept a plea agreement. In support of his claim, the petitioner refers to the Practice Book Rules pertaining to the time for filing of pretrial motions in criminal matters. In this case, both the State and the Court indicated an awareness of the suppression issue relating to the defendant's blood test. At a pretrial hearing on September 16, 1992, Assistant State's Attorney Dannehy stated, ". . . And the State was not going to be claiming that he had missed any deadline with respect to filing a motion of this nature." Petitioner's Exhibit 10, page 10. In a similar vein, the court stated, "It is going to be litigated, the introduction of the results taken at the hospital. It doesn't matter what's in the motion. There's going to be an objection on constitutional grounds. It's statutory and its going to be fully litigated; no question it is." Ibid. p. 16. Additionally, the court opined . . . "wouldn't get acted on before the trial any way. That's going to be done at the time of trial outside the jury's presence." Petitioner's Exhibit 10, pp. 16-17. Finally, on this issue of the blood tests, Attorney Kelly testified that the petitioner's blood tests were obtained by the State on the basis of a Search and Seizure warrant which, in his view, was facially proper. As to any other pretrial motions, Attorney Kelly CT Page 11363 testified that it is common practice in the Middlesex Judicial District that the State's Attorney's office does not hold counsel to strict compliance with motion filing deadlines. The petitioner presented no evidence that the absence of motions filed on his behalf would have or did prevent counsel from raising any proper issues on his behalf. The petitioner has failed to sustain his burden that he was rendered ineffective assistance of counsel.
CONFLICT OF INTEREST
The petitioner claims that the Public Defenders who represented him had a conflict of interest. The short answer to this allegation is that the petitioner presented no credible evidence at the habeas hearing in support of this claim. Transcripts of pretrial proceedings admitted into evidence at the habeas hearing indeed demonstrated that the petitioner was consistently dissatisfied with the process and with his representation. His pleas of nolo contendere entered on March 20, 1992 were vacated and erased on the basis of his statement, during canvas by the court, that he wished a second opinion. cf. Petitioner's Exhibit 1, p. 11. At the same time, his private counsel was permitted to withdraw and later a Public Defender, Attorney Christopher James, was appointed for him. Subsequently, on August 25, 1992, the court permitted Attorney James to withdraw on the basis that the petitioner and Attorney James had reached an impasse relating to the handling of the petitioner's defense. On the same day the court appointed Attorney Richard Kelly of the Office of the Public Defender to represent the petitioner over the stated objections of Attorney Kelly. These facts, however, don't constitute a showing of a conflict of interest. Nor do the colloquies between defense counsel and the court, on various pretrial dates, relating to issues of cooperation between the petitioner and counsel evidence a conflict of interest. In addition to their fiduciary responsibilities to the petitioner, defense counsel, as officers of the court, had a duty to the court. A thorough review of all the transcripts admitted as evidence in the habeas hearing reveals that at no time did counsel abrogate either responsibility.
THE MITTIMUS AND TOTAL EFFECTIVE SENTENCE
At the habeas hearing the petitioner offered as evidence a one page Mittimus dated December 8, 1992. cf. Petitioner's Exhibit 11. That mittimus refers to Docket Number MV 9-371431 and states that on that docket the petitioner was sentenced for his CT Page 11364 conviction of a violation of C.G.S. 14-227a as a second offender to serve one year concurrent with the sentence imposed on Docket Number MV 9-374353 for a total effective sentence of eleven years, execution suspended after serving seven and one half years, with three years probation with special conditions. The Mittimus correctly sets forth the total effective sentence as re cited by the Court. cf. Petitioner's Exhibit 9.
A review of the pretrial proceedings amply demonstrates that, at the time of his pleas, the petitioner was informed that the court-indicated sentence would, in effect, be eleven years to be suspended after serving seven and one half years. The following colloquy from the October 20, 1992 pretrial session is pertinent:
"THE COURT: All right. As you know this case has been pre-tried quite extensively between myself, the State and your attorney, and it is an indicated sentence by me that at the time of sentencing that you will receive an effective sentence of eleven years suspended after seven and a half years in prison, followed by three years probation with whatever conditions I may want to put on the probation. That would be the total effective sentence. It probably would be broken up that on the manslaughter you would — I don't know if we've really agreed how it would be broken up, but the total effect would be eleven after seven and a half with three probation." Petitioner's Exhibit 8, pp. 12-13.
At the time of sentencing the court imposed sentences which both the court and counsel viewed as having a total effect of eleven years after seven and one half with probation to follow. The following colloquy took place:
"Mr. Dannehy: I think you can just indicate it ten after six and a half and one year consecutive would come out with the same total effective sentence.
Mr. Kelly: That's my understanding as well, Your Honor.
The Court: Okay. All right, thank you. The manslaughter should be ten after six and a half with the one year consecutive on the assault two." Petitioner's Exhibit 9, pp. 26-27. The petitioner did not appeal the sentence; nor has he moved to correct the sentence.
The court finds that the petitioner has failed to sustain his burden of proving that the total effective sentence imposed by CT Page 11365 the court was ten years suspended after seven and one half years of confinement with probation rather than the stated total effective sentence of eleven years suspended after seven and one half years to serve with probation. The sentence comports with the provisions of Connecticut General Statutes 53a-37. cf. Green v. Warden, 178 Conn. 634 (1979). The calculation of the sentence is in accord with the requirements of Connecticut General Statute53a-38 which states, in pertinent part, ". . . (2) if the sentences run consecutively, the terms are added to arrive at an aggregate term and are satisfied by discharge of such aggregate term".
BREACH OF ATTORNEY-CLIENT CONFIDENCE
The essence of this claim by the petitioner is that his counsel gave information relating to a prior conviction for Driving While Under the Influence in Florida to the State's Attorney in violation of his right to enjoy a confidential relationship with counsel. Arguably, the petitioner's evidence that counsel discussed issues relating to the petitioner's psychiatric evaluation with the court could also fall within this category. As to the first claim, Attorney Kelly testified at the habeas hearing that it was his recollection that the State's Attorney's office already had in its possession the information relating to the petitioner's Florida conviction. The petitioner offered no credible evidence to the contrary. As to the psychiatric evaluation, a review of the transcripts reflects that defense counsel did indicate to the court that the petitioner had not cooperated in his efforts to have the petitioner examined by a psychiatrist selected by defense counsel. This was not a court ordered evaluation but rather an effort by defense counsel to determine if there might be mental health related factors which he could utilize to the defendant's advantage in the proceedings. It is the court's view that defense counsel's comments relating to the petitioner's failure to cooperate in this regard were presented to the court in the context of needing additional time to prepare an adequate defense and to avoid being pressed for trial prematurely. The comments were neither inappropriate nor a breach of any protected entitlement to confidentiality. The petitioner also claimed that there was information he had given to his attorney that later appeared in a local newspaper article published while his case was pending. The petitioner did not prove, however, that he had not given any such information to any other individuals; nor did he prove that this information was not independently in the hands of other individuals. The court will CT Page 11366 not draw implications based on speculation. The petitioner has failed to prove his claim that his counsel breached a duty of confidentiality owed to him.
DOUBLE JEOPARDY
The petitioner claims that on March 20, 1992 he pled guilty to a violation of C.G.S. 14-227a for which he received a sentence of ten days confinement and that he again pled guilty to the same offense on December 8, 1992 for which he received a sentence of confinement of one year. The petitioner is mistaken. The transcript of the March 20, 1992 proceedings reflects the following dialogue:
"CLERK: Robin Dodge, according to the substituted information, docket number MV 9-371431, line 17 of the pre-trial docket, you are charged with operating under the influence, Connecticut General Statute 14-227a. To this, how do you plead?
MR. DONOVAN: Your honor, there's a written plea of nolo contendere that's been submitted.
CLERK: Robin Dodge, according to this substituted information, docket number MV 9-374353, line 18 of the pretrial docket, you are charged with manslaughter in the second degree with a motor vehicle, Connecticut General Statute 53a-56b. To this, how do you plea?
MR. DONOVAN: Again, Your Honor, there's a written plea of nolo contendere that's been submitted.
CLERK: Same information, you are charged with assault in the second degree with a motor vehicle, Connecticut General Statute53a-60d. To this, how do you plea?
MR. DONOVAN: Again, Your Honor, a written plea of nolo contendere, if it please the Court." Petitioner's Exhibit 1, pp. 3-4.
Additionally, in the same proceeding the petitioner was put to plea on a Part B information with respect to MV 9-371431 and admitted that he had previously been convicted of driving under the influence on July 17, 1990. Ibid, p. 5.
Following the State's Attorney's recitation of the factual CT Page 11367 basis to the pleas the court began its canvas of the petitioner during which the petitioner indicated that he wanted to get a second opinion. Following a short colloquy the court stated: "All right. Forget this plea. I'm not going to — this is an automatic habeas corpus." Petitioner's Exhibit 1, p. 10. Following more colloquy, this conversation took place:
"MR. DANNAHEY: Please are withdrawn then?
THE COURT: Yes, pleas are vacated and erased. Bring him back in two weeks less a day, Thursday, April 2nd. I'll put it — leave it on the pretrial docket. Maybe his family will get him new counsel. I don't know. If not, then you can apply for a Public Defender." IBID, p. 11.
Subsequently, on October 20, 1992 in Docket Number MV 9-371431 the petitioner was put to plea and pled guilty to driving under the influence in violation of C.G.S. 14-227a and to a part B of that information charging him with being a second offender. The petitioner was not sentenced twice for the same offense. There is no merit to his claim of double jeopardy.
SENTENCE IN EXCESS OF THE PLEA AGREEMENT
During the Court's canvas of the petitioner's pleas on October 20, 1992 the Court indicated the following:
"THE COURT. All right. As you know this case has been pre-tried quite extensively between myself, the State and your attorney, and it is an indicated sentence by me that at the time of sentencing that you will receive an effective sentence of eleven years suspended after seven and a half years in prison, followed by three years probation with whatever conditions I may want to put on the probation. That would be a total effective sentence. It probably would be broken up that on the manslaughter you would — I don't know if we've really agreed how it would be broken up, but the total effect would be eleven after seven and a half with three probation." Petitioner's Exhibit 8, p. 13.
The petitioner was sentenced on December 8, 1992. At sentencing the court indicated the following: "The total effective sentence is eleven, suspended after seven and a half years in prison, followed by three years probation. The conditions will be that you not operate a motor vehicle while you're on probation. As far as I'm concerned, if they revoked your license for the rest of CT Page 11368 your life, it wouldn't bother me at all but I think that's up to the motor vehicle. I'll also have a condition of alcohol counseling and treatment, which will also be any random urinalysis testing that they want to do. Also, a condition of no alcohol related arrests during the period of probation. And I am going to impose a period of community service, five hundred hours of community service when the sentence eventually kicks in to probation.
So, the total effective is eleven after seven and a half, three years probation with those conditions." Petitioner's Exhibit 9, pp. 26-27. The petitioner now complains that the conditions of probation exceed the plea agreement. In this claim he is mistaken. At the time of the petitioner's canvas by the court he was put on notice by the court that at sentencing the court would impose three years probation, ". . . with whatever conditions I may want to put on the probation." Petitioner's Exhibit 8, p. 13. Each of the conditions imposed by the court was within the authority of the court to order. The petitioner believes his argument is buttressed by the fact that subsequent to his conviction he received notice from the Department of Motor Vehicles suspending his license indefinitely. cf. Petitioner's Exhibits 13a and 13b. Administrative action taken by an Executive Agency on the basis of the petitioner's conviction is not within the ambit of the Court and is not a proper subject of a habeas petition.
For the reasons set forth herein, the petition is dismissed.
Bishop, J.