[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM FILED APRIL 11, 1996
On January 11, 1996, the petitioner, Kasey Lewis, filed an amended petition seeking a writ of habeas corpus. On January 16, 1996, the respondent, Leonard Barbieri, filed a motion to dismiss the amended petition, claiming therein that the court lacks subject matter jurisdiction. On February 23, 1996, the court heard argument from both parties concerning the motion to dismiss. The following are the court's conclusion.
 I
The amended petition alleges the following facts. The petitioner is currently serving in the custody of the respondent a total effective sentence of 5 years and 28 months which commenced on November 30, 1990.[1] On May 28, 1991, Administrative Directive 9.5, also known as the Code of Penal Discipline (hereinafter referred to as "1991 Directive"), was promulgated. The 1991 Directive allegedly provided that an inmate's statutory good time, forfeited for prison disciplinary reasons, may be restored if the inmate remains without a Class A Violation for six (6) months; a Class B Violation for four (4) months; and a Class C violation for two (2) months.
The amended petition further alleges that on May 29, 1992, while the 1991 Directive was in effect, the petitioner was issued a Class A disciplinary ticket, and as a result, he lost twenty-five days of earned statutory good time. Nearly one year later, on April 19, 1993, the amended petition alleges that the respondent promulgated a new Administrative Directive 9.5 (hereinafter referred to as "1993 Directive"). The 1993 Directive allegedly provided that an inmate's statutory good time, forfeited for disciplinary reasons, may be restored if the inmate CT Page 2895-A remains without a Class A Violation for twelve (12) months; a Class B Violation for six (6) months; and a Class C violation for four (4) months.
On February 7, 1994, the respondent allegedly amended the 1993 Directive. The new amended version (hereinafter referred to as "1994 Directive"), currently in effect, allegedly provides that an inmate's statutory good time, forfeited for disciplinary reasons, may be restored if the inmate remains without a Class A Violation for sixty (60) months; a Class B Violation for forty-eight (48) months; and a Class C violation for thirty-six (36) months.
The amended petition alleges that the petitioner remained free of disciplinary tickets from May 29, 1992, to May 20, 1993, a period of almost twelve months. Despite repeated requests, the amended petition alleges that the petitioner was denied the opportunity to apply for the restoration of his lost twenty-five days of earned statutory good time. The petitioner's requests to apply for restoration were allegedly denied because the respondent determined that the petitioner must meet the requirements of the 1994 Directive before he is eligible to have his lost statutory good time restored. The amended petition alleges that the petitioner has exhausted all of his administrative remedies, including the institutional appeal and grievance procedures.
Based on the foregoing factual allegations, the petitioner claims that the respondent's retroactive application of the 1994 Directive is unlawful and improper for several reasons. First, the petitioner claims that the 1994 Directive is unenforceable under the Uniform Administrative Procedures Act (UAPA), in particular General Statutes § 4-168(h), because the respondent failed to comply with General Statutes § 4-168 as allegedly required by § 18-78a. Second, the petitioner claims that the retroactive application of the 1994 Directive has lengthened the period of the petitioner's confinement and thereby constitutes cruel and unusual punishment under the Eighth andFourteenth Amendments of the United States Constitution. Lastly, the petitioner claims that the retroactive application of the 1994 Directive violates the Ex Post Facto Clause of Article I, Section 9 and 10 of the United States Constitution.
Therefore, the petitioner seeks an order by the court enjoining the respondent from applying the 1994 Directive CT Page 2895-B retroactively to the petitioner's May 1992 violation. Furthermore, the petitioner seeks an order requiring the respondent to permit the petitioner to apply for the restoration of his forfeited statutory good time.
 II.
The lack of subject matter jurisdiction is properly raised in a motion to dismiss. Practice Book § 529H(1). "A possible absence of subject matter jurisdiction must be addressed and decided whenever the issue is raised." (Internal quotation marks omitted.) Windham Taxpayers Assn. v. Board of Selectmen,234 Conn. 513, 522, 662 A.2d 1281 (1995).
The respondent has moved to dismiss the amended petition on the ground that the court lacks subject matter jurisdiction. The respondent argues that the court lacks subject matter jurisdiction because the petitioner has failed to demonstrate a liberty interest that is subject to protection under the writ of habeas corpus. While the respondent concedes that the loss of earned statutory good time is a liberty interest cognizable in the habeas corpus forum; citing Flaherty v. Warden, 155 Conn. 36,229 A.2d 362 (1967); the respondent asserts that the petitioner is not challenging the forfeiture of his earned statutory good time but is instead claiming that the respondent must return his forfeited statutory good time. The respondent contends that the petitioner has no right to compel the respondent to consider an application for the restoration of good time or to grant such an application. Therefore, the respondent argues that the petitioner has failed to allege a cognizable habeas corpus claim, and thus, the court must dismiss the amended petition for lack of subject matter jurisdiction.
Furthermore, the respondent argues that it is fundamental that a petition for writ of habeas must concern an inmate's detention. The respondent argues that if the promulgation of the 1993 and 1994 Directives did in fact violate the UAPA, then the petitioner has a remedy through General Statutes § 4-174. At most, the respondent argues that the petitioner's claim concerning the UAPA raises a question of administrative law, not a question concerning the legality of the petitioner's detention. Therefore, the respondent argues that the amended petition should be dismissed.
In response the petitioner argues that the loss of statutory CT Page 2895-C good time is a liberty interest cognizable under a writ of habeas corpus. The petitioner claims that notwithstanding the respondent's argument to the contrary, the ability to apply for the restoration of his good time directly impacts his detention, because it potentially affects his effective release date. Therefore, the petitioner argues that the respondent's motion to dismiss should be denied.
In Vincenzo v. Warden, 26 Conn. App. 132, 599 A.2d 31 (1991), the Appellate Court explored "the outer limits of jurisdiction relative to the ephemeral and complex boundaries of the Great Writ." Id., 133. The Appellate Court discovered that "from the time the writ originated in seventeenth century England, its central purpose has been to test the legality of detention;" id., 136; a view the United States Supreme Court has adopted in the development of federal habeas jurisprudence. See id. Indeed, "the United States Supreme Court has said that `[t]he purpose of the proceeding defined by the [federal habeas] statute was to inquire into the legality of the detention . . . There is no warrant in either the statute or the writ for its use to invoke judicial determination of questions which could not affect the lawfulness of the custody and detention, and no suggestion of such a use has been found in the commentaries on the English common law.'McNally v. Hill, [293 U.S. 131, 136-37, 55 S.Ct. 24, 79 L.Ed. 238
(1934), overruled on other grounds. Peyton v. Rowe, 391 U.S. 54,88 S.Ct. 1549, 20 L.Ed.2d 426 (1968).]" Vincenzo v. Warden,26 Conn. App. 136.
The Appellate Court further discovered that the history of Connecticut's habeas jurisprudence is wholly in accord with the English and federal principles, unmistakably illustrating that the purpose of the Great Writ in Connecticut was to inquire into the legality of society's detention of a person. Id., 137-38. In support thereof, the Appellate Court recounted from and cited to the following Connecticut Supreme Court decisions: "Habeas corpus provides a special and extraordinary legal remedy for illegal detention. Reed v. Reincke, [155 Conn. 591, 594, 236 A.2d 909
(1967)]; McClain v. Robinson, 189 Conn. 663, 668, 457 A.2d 1072
(1983); . . . The deprivation of legal rights is essential before the writ may be issued. McPheters v. Pollard, 146 Conn. 509, 510,152 A.2d 632 (1959). Questions which do not concern the lawfulness of the detention cannot properly be reviewed on habeas corpus. Sanchez v. Warden, 214 Conn. 23, 33, 570 A.2d 673 (1990), quoting Flaherty v. Warden, 155 Conn. 36, 40, 229 A.2d 362
(1967). When a habeas petition is properly before a court, the CT Page 2895-D remedies it may award depend on the constitutional rights being vindicated. Gaines v. Manson, 194 Conn. 510, 516, 481 A.2d 1084
(1984). Further, any remedy must be commensurate with the scope of the constitutional violations that have been established.Id., 528." (Citations omitted; footnote omitted; internal quotation marks omitted.) Vincenzo v. Warden, supra, 26 Conn. App. 137-38.
Thus, the Appellate Court stated that notwithstanding the fact that "some of our courts have expanded the scope of prisoners' claims that are cognizable in a habeas action, the well established precepts of illegal detention and deprivation of constitutional rights remain the touchstones of [habeas corpus] jurisdiction." Id., 138 n. 4; see also Santiago v. Commissioner ofCorrection, 39 Conn. App. 674, 679, 667 A.2d 304 (1995) (quoting footnote 4 in Vincenzo v. Warden approvingly). Accordingly, the Appellate Court determined that in order to invoke the court's jurisdiction to issue a writ of habeas, a petitioner must demonstrate a cognizable claim of illegal detention Vincenzo v.Warden, supra, 26 Conn. App. 144. Anything less, the Appellate Court cautioned, would permit a petitioner to "leapfrog" into court while failing to surmount the jurisdictional requirements.Id.
Heeding the Vincenzo court's announcement that illegal detention and the deprivation of constitutional rights remain the touchstones of habeas jurisdiction in Connecticut, the court addresses the respondent's motion to dismiss. In the present case, the petitioner has set out in his amended petition three legal claims supporting his ultimate contention that he is being illegally detained. First, the petitioner claims that the respondent failed to comply with the UAPA when he promulgated the 1994 Directive. The petitioner therefore claims that pursuant to the UAPA the 1994 Directive is unenforceable, and thus, the respondent's retroactive application is improper and unlawful. Second, the petitioner claims that the retroactive application of the 1994 Directive has lengthened the period of the petitioner's confinement and thereby constitutes cruel and unusual punishment under the Eighth and Fourteenth Amendments of the United States Constitution. Lastly, the petitioner claims that the retroactive application of the 1994 Directive violates the Ex Post Facto Clause of Article I, Section 9 and 10 of the United States Constitution.
It is important to note that the court is not testing the legal sufficiency of the amended petition, or at this point, CT Page 2895-E passing upon the merits of the petitioner's claims. Instead, the court is only addressing a motion to dismiss that challenges the court's jurisdiction over the subject matter.
The court therefore finds, based upon the allegations of the amended petition, that it possesses jurisdiction to entertain the petitioner's second and third claims because the petitioner is alleging that the respondent's retroactive application of the 1994 Directive violates his constitutional rights. Vincenzo v.Warden, supra, 26 Conn. App. 138 n. 4; see also Lozada v. Warden,223 Conn. 834, 841-42, 613 A.2d 818 (1992) (where the court found that the writ of habeas is available as a remedy for issues of fundamental fairness implicating constitutional rights). Whether the petitioner will succeed on the merits of his claims is not herein addressed.
In accord with Vincenzo v. Warden, however, the court finds that it lacks subject matter jurisdiction over the petitioner's first legal claim because the petitioner has failed to allege a protected liberty interest. The facts in Vincenzo v. Warden, as stated by the Appellate Court, are as follows: "The petitioner was convicted of murder in 1974 and sentenced to a term of imprisonment of twenty years to life. In 1977, he was sentenced to a consecutive term of one to four years for conspiring to bring unauthorized items into a penal institution. On August 25, 1986, the parole board conducted a hearing to determine whether the petitioner should be paroled to the consecutive sentence. At the time of the hearing, the board was operating under its own procedures and regulations, which had not been submitted to the state attorney general and the legislature for approval prior to implementation. General Statutes §§ 4-169 and 4-170. The board denied the petitioner release and gave him written notice of the reasons for its decision. The petitioner then sought a writ of habeas corpus, alleging that his confinement is illegal because the board's regulations do not conform to the requirements for rule-making that it must follow as a state agency pursuant to the UAPA. After a trial to the court on March 27, 1989, the petition was dismissed on May 11, 1990." Vincenzo v. Warden, supra,26 Conn. App. 134.
The question on appeal was "whether a prisoner's challenge to the parole board's failure to adopt regulations pursuant to the UAPA constitutes a cognizable claim of illegal detention that gives the habeas court jurisdiction over the subject matter." Id.
After the Appellate Court set forth the boundaries of a habeas CT Page 2895-F court's jurisdiction, it proceeded to review whether Vincenzo, the petitioner, alleged a cognizable claim of illegal detention. Recall that Vincenzo claimed that his confinement was illegal because the parole board applied parole regulations to the petitioner's parole application that were arguably unenforceable because the parole board failed to comply with the UAPA when they promulgated the regulations. The Appellate Court stated that "[f]or this type of claim of illegal detention to be cognizable in a habeas action, . . ., the petitioner would, at the very least, have to have some constitutional or statutorily created liberty interest in parole release." Id., 138. Therefore, the issue for the Appellate Court became: When does a prisoner have a protected liberty interest in parole release?
The Appellate Court noted that the United States Supreme Court has held that the "mere `presence of a parole system by itself does not give rise to a constitutionally protected liberty interest in parole release.'" Vincenzo v. Warden, supra,26 Conn. App. 139, quoting Board of Pardons v. Allen, 482 U.S. 369,373, 107 S.Ct. 2415, 96 L.Ed.2d 303 (1987). Instead, the Supreme Court indicated that the existence of a protected liberty interest in parole release depends upon the state parole statute. If the state parole statute mandates that a prisoner must be released if the prisoner meets statutorily created substantive criteria, then a protected liberty interest in parole release exists. On the other hand, if the state parole statute leaves the ultimate parole decision to the discretion of the parole board, even if the prisoner meets the statutorily created criteria, then a prisoner cannot claim a protected liberty interest in parole release. See Vincenzo v. Warden, supra, 26 Conn. App. 138-41 (where the Appellate Court outlines the federal caselaw that addresses the issue of whether a prisoner has a protected liberty interest in parole release).
In accordance with the U.S. Supreme Court's reasoning, the Appellate Court reviewed Connecticut's parole release statute, § 54-125, and concluded that it did not give rise to a protected liberty interest in parole release. The Appellate Court noted at the outset that "§ 54-125 states that an inmate `may be allowed to go at large in the discretion of the panel of the board of parole for the institution in which the person is confined, if (1) . . . there is reasonable probability that such inmate will live and remain at liberty without violating the law and (2) such release is not incompatible with the welfare of society.'" (Emphasis in original.) Vincenzo v. Warden, supra,
CT Page 2895-G26 Conn. App. 140. Thus, the Appellate Court found that although the statute contains the substantive predicates of parole release, it creates no right or entitlement to release once the substantive predicates are met. Instead, the Appellate Court determined that the statute vests broad discretion in the parole board. Id., 141.
Accordingly, the Appellate Court concluded that "[a]lthough the petitioner alleged that his confinement was illegal because the parole board did not adhere to the UAPA's procedures for rule-making, no such liberty interest can arise. . . That the petitioner in this case does not challenge the propriety of his convictions only heightens the absurdity of his claim: One lawfully convicted of a crime, lacking any protected liberty interest in parole release, may nevertheless win his freedom by asserting in a habeas action that his confinement has been made illegal because a parole board allegedly failed to promulgate regulations in accordance with state law." (Citation and text omitted.) Id., 142-43. "Since it is clear that an inmate has no liberty interest in or right to parole release, it follows a fortiori that he cannot invoke a court's subject matter jurisdiction in a habeas action by claiming his confinement is illegal based on a parole board's failure to adhere to rule-making procedures. Unless a liberty interest in parole exists, the procedures followed in the parole determination are not required to comport with standards of fundamental fairness. . . The petitioner's contention that he has a right to parole release because the board failed to adhere to the UAPA's rulemaking provisions is utterly lacking in support, in either law or logic, and is `analytically indefensible.'" (Citations omitted.) Id.,
143-44. The Appellate Court therefore affirmed the trial court's dismissal of the petitioner's habeas petition.
In the present case, when the petitioner was sentenced in 1990 and again in 1994, General Statutes § 18-7a(c) created a statutory right in the petitioner to earn good time credit. The right, however, was subject to conditions. Section 18-7a(c) states:
 Any person sentenced to a term of imprisonment for an offense committed on or after July 1, 1983, may, while . . . serving such sentence, by good conduct and obedience to the rules which have been established for the service of his sentence, earn a reduction of his sentence as such sentence is served in the amount of ten days for each month served CT Page 2895-H and pro rata for a part of a month served of a sentence up to five years, and twelve days for each month served and pro rata for a part of a month served for the sixth and each subsequent year of a sentence which is more than five years. Misconduct or refusal to obey the rules which have been established for the service of his sentence shall subject the prisoner to the loss of all or any portion of such reduction by the commissioner or his designee.
(Emphasis added.) General Statutes § 18-7a(c). The statute is clear that statutory good time credit is earned by good conduct and obedience to the disciplinary rules established for the institution. Likewise, the statute is as clear that disobedience or misconduct shall cause an inmate to lose all or any portion of earned good time credit.
Significantly, the petitioner is not challenging the loss of his good time as a result of his misconduct because such a claim is indeed a protected liberty interest. Santiago v. Commissionerof Correction, supra, 39 Conn. App. 682. Instead, the petitioner is apparently arguing that under the 1991 Directive he is entitled to apply for the restoration of his forfeited good time, while the 1994 Directive delays his ability to exercise that right. The petitioner, however, cannot be heard to complain in a habeas court that the 1994 Directive is unenforceable because under the 1991 Directive the petitioner had no protected liberty interest in the restoration of forfeited statutory good time.
The 1991 Directive, indisputably in force at the time the petitioner lost his earned good time credit, states:
 Good Time Restoration. The Unit Administrator may, for exemplary conduct, restore any portion of lost good time to any inmate upon application according to the following schedule: Class A Violation: After remaining discipline free for six (6) months; Class B Violation: After remaining discipline free for four (4) months; and Class C Violation: After remaining discipline free for two (2) months. Any Informal Disposition shall not count against these time frames.
See Defendant's Exh. 1, 33. The 1994 Directive states: CT Page 2895-I
 Good Time Restoration. No inmate should anticipate the restoration of forfeited good time. However, in the event an inmate has maintained exceptional behavior as specified below, the inmate may make application for restoration. Upon application by the inmate the Unit Administrator may recommend to the Director of the Region that all or any portion of lost statutory good time be restored. Such recommendation should be based on exemplary conduct and outstanding performance. At a minimum the inmate shall meet the following requirements in order to be considered for statutory good time restoration. [1] No conviction for a Class A misconduct within 60 months; Class B misconduct within 48 months; and Class C misconduct or Informal Disposition within 36 months prior to application. [2] Continuous work assignment with favorable work evaluations for 36 months prior to application. [3] Fully successful participation in an assigned program, other than work, for 24 months prior to application. [4] No increase in classification risk level within last 60 months . . . An inmate who does not qualify for restoration as a result of insufficient time served, may apply to the Commissioner through the same procedures noted above, when the inmate is within 12 months of discharge. Such inmate must have demonstrated excellent performance and [be] discipline free for 12 months prior to application.
See Memo of Law in Support of Motion to Dismiss, portion of 1994 Directive attached, 37.
Thus, while the petitioner is correct that the 1994 Directive, in comparison to the 1991 Directive, extends the time period an inmate must wait to apply for the restoration of forfeited good time, under the 1991 Directive, the petitioner was not entitled to the restoration of his lost good time. The 1991 Directive clearly leaves the decision of whether to restore an inmate's lost good time to the unfettered discretion of the Unit Administrator. Therefore, to paraphrase the Vincenzo court: Since it is clear that the petitioner had no liberty interest in or right to the restoration of lost statutory good time under the 1991 Directive, it follows a fortiori that he cannot invoke a court's subject matter jurisdiction in a habeas action by claiming his confinement is illegal based on the respondent's CT Page 2895-J failure to adhere to rulemaking procedures when promulgating the 1994 Directive concerning the restoration of good time. SeeVincenzo v. Warden, supra, 26 Conn. App. 143-44. Accordingly, the court lacks subject matter jurisdiction to entertain the petitioner's claim that the respondent's failure to adhere to the UAPA's rule-making procedures renders his confinement illegal.
 III.
In conclusion, the court dismisses the petitioner's first claim because the court lacks subject matter jurisdiction. The court finds, however, that it has subject matter jurisdiction to entertain the petitioner's second and third claim.
Sullivan, W., J.