# IN THE COURT OF APPEALS OF IOWA

No. 22-0232
Filed March 29, 2023

IN RE THE MARRIAGE OF DEREK MITCHELL FINLEY
AND MEGAN YVONNE FINLEY

Upon the Petition of
DEREK MITCHELL FINLEY,
        Petitioner-Appellant,

And Concerning
MEGAN YVONNE FINLEY,
        Respondent-Appellee.
_____

        Appeal from the Iowa District Court for Polk County, Celene Gogerty, Judge.

        Derek Finley appeals custody, physical care, and child support provisions

of a dissolution decree. **AFFIRMED.**

        Jessica A. Millage of Flanagan Law Group, PLLC, Des Moines, for

appellant.

        Megan Finley, Prescott, Arizona, self-represented appellee.

        Considered by Bower, C.J., and Badding and Buller, JJ.

**BOWER, Chief Judge.**

Derek Finley appeals the legal custody, physical care, visitation, and child support provisions of the decree dissolving his marriage to Megan Finley.[1] We affirm.

**I. Background Facts & Proceedings.**

Derek and Megan started dating in 2011 and had a child, C.F., in 2015. They married in 2017.

Derek is a military veteran and was medically retired in 2017. While serving, Derek suffered a traumatic brain injury and posttraumatic stress disorder, he also has knee problems. Derek is considered totally disabled by the military and receives veteran's disability benefits and Social Security disability benefits.[2] He also receives rental income from a roommate staying in the marital home with Derek and the child.[3] Derek has an annual income of $70,014.48 and is not currently employed.

Megan has completed training as an aesthetician and as a certified nursing assistant. During the marriage, she stayed home with the child and was paid by the Veteran's Administration to be Derek's caregiver. Megan has stomach and hip

---

[1] On March 1, 2023, Derek filed a motion for limited remand, vaguely asserting "facts and circumstances have developed regarding the child's care and well-being" and requesting a remand to the district court to address a petition for modification. The motion does not explain how the remand would affect this appeal. Therefore, the merits of this appeal can and should be resolved without remand.

[2] Derek waived his military retirement, electing to obtain veteran's disability benefits.

[3] Derek was unable to provide much information about his roommate, including whether he had been to jail, stating "I believe that's his personal business and I don't intend to get into it." However, questioning showed Derek knew of accusations made against his roommate for inappropriate conduct.

issues that have impacted her ability to work. She recently started a cleaning business in Arizona and testified she earns approximately $750 per month.

On May 15, 2020, Megan filed a petition for relief from domestic abuse. The court issued a temporary protective order granting her temporary custody of C.F. and possession of the family home. The police confiscated three firearms and ammunition from the house at Megan's request, one of which was set up suspiciously at a window in the attic. Days later, Megan took C.F. to Arizona to stay with her mother.

On May 19, Derek filed a petition for dissolution. He requested joint legal custody and shared physical care of the child.[4]

Megan did not appear at the May 26 final hearing on her Iowa protective order, and the case was dismissed. Megan filed a petition for child custody and a protective order in Arizona. She was granted the protective order, but the Iowa and Arizona courts determined Iowa was the appropriate jurisdiction to decide the dissolution and custody issues.

In June, the Iowa district court issued an order on temporary matters. The court ordered joint legal custody and shared physical care with weekly transfers. The court gave Derek possession of the marital home. Derek was ordered to pay child support. Megan returned to Iowa to be near the child, staying with friends.

In October, Megan returned to Arizona, stating she did not feel safe residing in Iowa. Megan attended counseling available through a domestic violence center

---

[4] In an affidavit signed in June, Derek requested physical care of the child with visitation for Megan.

in Arizona.[5]  After Megan left Iowa, Derek stopped making payments on her vehicle and blocked her from their joint bank accounts.

In June 2021, Megan requested modification of the temporary order and asked the court to order a visit, asserting Derek refused to allow C.F. to visit her in Arizona.  In July, the court modified the temporary order, placing the child in Derek's physical care and establishing a visitation schedule.  Derek requested Megan's annual income be imputed at minimum wage in Arizona, and the court did so in its calculations.

The dissolution trial was held in December.  Derek had counsel, and Megan was self-represented.  Both Derek and Megan asked for physical care of the child. Derek further asked that Megan not have set visitation—wanting her to have to notify him when she would be in town—and not have a set schedule for school breaks.

Both parties levelled accusations at the other during trial.  Derek has a history of anger issues and fighting and has seriously injured other people while fighting.  In his testimony, Derek glossed over some of his fighting and its consequences, only admitting incidents when directly questioned about them.[6] Derek's veteran's medical records and disability determination discuss his anger outbursts and aggression.  Derek called Megan "verbally abusive and controlling,"

---

[5] The domestic violence center offered six counseling sessions.  Megan testified she has been looking for another counselor.

[6] During cross-examination, Derek testified his last fight was right after he returned from deployment in 2011.  Further questioning revealed additional fights, including a serious physical altercation with his father, a fight with a friend where Derek broke the other person's leg, and then, at the end of redirect, Derek remembered he had "popped" a guy in the mouth in 2020.

asserting she would be physically abusive and in his personal space and he reacted physically by pushing and slapping her. Derek is six feet, two inches tall and 230 pounds; Megan is four feet, nine inches tall and around 145 pounds. Derek admitted he threatened to kill Megan.

Megan testified Derek had punched her and placed a pillow over her face; pushed her into things multiple times, leaving bruises; and threatened to kill her, her dog, and her friends at various times.

When they were together, Derek and Megan both drank to excess. Derek blamed his drinking on Megan but later admitted he had been drinking every night before they met after returning from a deployment. Megan is on medication for her attention deficit hyperactive disorder. Before their separation, Derek was on medication for his posttraumatic stress disorder, though he has since stopped taking the medicine. Derek testified he uses marijuana nightly to help him sleep and sometimes on weekends when the child is with a relative.

The child has behavioral issues, including kicking, hitting, spitting, and miming shooting a gun into rooms while at school. Derek testified there is an instance of verbal or physical aggression at school "at least daily." Derek takes away some privileges, but he blames his child's behavior on his roommate's child and a video game. Megan scheduled counseling for the child, as recommended by the school. Derek took the child to the first few appointments then failed to show to the scheduled morning appointments and took the child directly to school instead. Derek's testimony indicated he was ambivalent about the usefulness of counseling. He stated he only wanted the child to have appointments outside of

school hours, despite limited availability. He has made little effort to schedule appointments during his preferred times.

Derek claimed Megan does not call the child and misses scheduled interactions. Megan testified she talks to the child "[p]retty much every other day" and she is in regular communication with the child's school and therapist. The court found Megan was in frequent contact with both.

After considering the testimony of Derek and Megan, and the exhibits submitted by each party, the court issued its decree dissolving the marriage the following day. The district court found, "The evidence in this case demonstrates there is an established history of domestic abuse by Derek against Megan," and noted a statutory rebuttable presumption against joint legal custody. The court determined, "Derek's behavior makes a co-parenting relationship untenable" and found it was in C.F.'s best interest that Megan be granted sole legal custody. The court went on to place the child in Megan's physical care and set visitation and child support.

Derek appeals the decree's provisions placing the child in Megan's legal custody and physical care and asserts the court should have imputed higher income to Megan in its child-support calculations.[7] If we deny his custody and physical care requests, he asks for additional visitation.

---

[7] Megan, who is representing herself on appeal, did not file a final appellate brief. *See White v. Harper*, 807 N.W.2d 289, 292 (Iowa Ct. App. 2011) (noting an appellee failing to file a brief does not require reversal; "we will not search the record for a theory to uphold the decision of the district court," and we confine ourselves to the objections raised by the appellant).

**II. Standard of Review.**

We review marriage dissolution cases de novo. *See In re Marriage of Hynick*, 727 N.W.2d 575, 577 (Iowa 2007). "We give weight to the findings of the district court, especially to the extent credibility determinations are involved." *In re Marriage of Hansen*, 733 N.W.2d 683, 690 (Iowa 2007). "In child custody cases, the first and governing consideration of the courts is the best interests of the child." Iowa R. App. P. 6.904(3)(o).

**III. Analysis.**

*Legal custody.* Derek argues he had no notice legal custody was a disputed issue at the dissolution trial because Megan did not file an answer to his petition requesting joint custody.[8] In dissolution cases where a minor child is involved, legal custody is always an issue to be decided unless the parties have reached an agreement on the issue. *See* Iowa Code § 598.41(1)-(2), (4) (2021) (giving the court discretion to order joint custody and noting the factors to consider when determining custody "shall not apply when parents agree to joint custody"); *Smith v. Chesmore*, No. 22-0744, 2023 WL 382992, at *3-4 (Iowa Ct. App. Jan. 25, 2023) (modifying an award of sole legal custody where the petition requested joint legal custody and the parties agreed to that arrangement). The court must determine custody "insofar as is reasonable and in the best interest of the child." *Id.* § 598.41(1)(a).

---

[8] Both Derek's and Megan's testimony indicates each wanted legal custody and physical care of the child.

Derek does not cite any authority holding legal custody of a minor child is not at issue in a dissolution case.[9] He also asserts he offered no evidence to support a joint custody arrangement but makes no effort to apply the evidence that was presented to the statutory factors for deciding legal custody.

We find this argument is waived. *See* Iowa R. App. P. 6.903(2)(g)(3).

*Physical care.* In his argument for physical care, Derek emphasizes he had physical care of the child from October 2020 until trial in December 2021 after Megan left the state and was unable to exercise shared physical care. But Megan left the state because she did not feel safe. And the district court made a finding there has been a history of domestic abuse by Derek against Megan.

The legislature has listed specific factors for the court to consider when determining the best custody arrangement for the child where there has been a finding of domestic abuse. *See id.*[10] Section 598.41(1)(d) specifically directs

---

[9] Derek cited a general notice-pleading case and a physical care dissolution case, which is only relevant insofar as it defines the difference between legal custody and physical care.

[10] The statutory sections for custody relating to domestic abuse state:

1. b. . . . [I]f the court finds that a history of domestic abuse exists, a rebuttable presumption against the awarding of joint custody exists.

c. The court shall consider the denial by one parent of the child's opportunity for maximum continuing contact with the other parent, without just cause, a significant factor in determining the proper custody arrangement. Just cause may include a determination by the court pursuant to subsection 3, paragraph "j", that a history of domestic abuse exists between the parents.

d. If a history of domestic abuse exists as determined by a court pursuant to subsection 3, paragraph "j", and if a parent who is a victim of such domestic abuse relocates or is absent from the home based upon the fear of or actual acts or threats of domestic abuse perpetrated by the other parent, the court shall not consider the relocation or absence of that parent as a factor against that parent in the awarding of custody or visitation.

courts to *not* consider as a factor the relocation or absence of a parent who is the victim of domestic abuse and who moves "based upon the fear of or actual threats of domestic abuse perpetrated by the other parent." Given the district court's finding of "an established history of domestic abuse by Derek against Megan," her relocation is not a factor in the physical care decision.

Derek next argues he is more than capable of getting the child necessary counseling and Megan did not establish she is able to take care of herself or the child. The district court found Derek not credible on the counseling question, and we agree. Actions speak louder than words. Megan worked with the school to find a counselor for the child and made appointments to get the child help to address worsening behavioral issues. Derek took the child to two appointments

---

. . . .
2. c. A finding by the court that a history of domestic abuse exists, as specified in subsection 3, paragraph "j", which is not rebutted, shall outweigh consideration of any other factor specified in subsection 3 in the determination of the awarding of custody under this subsection.
. . . .
3. In considering what custody arrangement under subsection 2 is in the best interest of the minor child, the court shall consider the following factors:
. . . .
j. Whether a history of domestic abuse, as defined in section 236.2, exists. In determining whether a history of domestic abuse exists, the court's consideration shall include but is not limited to commencement of an action pursuant to section 236.3, the issuance of a protective order against the parent or the issuance of a court order or consent agreement pursuant to section 236.5, the issuance of an emergency order pursuant to section 236.6, the holding of a parent in contempt pursuant to section 664A.7, the response of a peace officer to the scene of alleged domestic abuse or the arrest of a parent following response to a report of alleged domestic abuse, or a conviction for domestic abuse assault pursuant to section 708.2A.
Iowa Code § 598.41.

then decided preserving the school day was more important and no-showed to further appointments rather than canceling or rescheduling. Despite his wide-open schedule as a nonworking individual, Derek has not made any effort to schedule the child for counseling during his preferred time frame.

Derek also takes issue with the court's examination of the witnesses, claiming the court crossed the line between factfinder and adversary, "becoming an advocate for a pro se party." The court's questions Derek takes issue with related to allegations raised in affidavits filed by the parties, child protective services reports, and his own testimony from earlier in the hearing. The court asked pointed questions based on the allegations Megan made in her petitions for relief from domestic abuse, in her affidavits, and what was written in the VA record and his disability determination, all of which had been filed with the court. The questions about Derek's response to anger issues and his interactions with Megan were relevant information necessary for the court to consider when deciding which parent's physical care would be in the child's best interests. The court did not overstep. *See In re Marriage of Worthington*, 504 N.W.2d 147, 149–50 (Iowa Ct. App. 1993) (finding the court's questions "were simply intended for the protection of the [child]'s best interests" and the judge acted impartially and not prejudicially).

We affirm the district court's physical care decision.

*Visitation.* Derek requested additional visitation if we affirm the district court's physical care decision. The decree entitles Derek to visitation during all spring breaks, three consecutive weeks during summer break, alternating Thanksgiving breaks, and the parties' splitting winter breaks. Derek requests his spring break visits start the day school releases until the day before school restarts,

eight weeks of summer visitation, and every winter break from December 26 until the day before school resumes.

We affirm the district court's visitation schedule. We clarify that when appropriate, Derek's school break visits begin no earlier than 5:00 p.m. the day school lets out, and when visits end just before school, the child should be returned to Megan by 3:00 p.m. the day before school starts.

*Child Support.* Derek asserts Megan is voluntarily underemployed by cleaning houses rather than using her professional certificates and the court should have imputed a higher income to her in its child support calculations. The court declined to impute income to Megan, stating, "The court finds no good cause to vary from the child support guidelines."

For purposes of child support, Iowa Court Rule 9.5(1)(d) provides, "To determine gross income, the court may not impute income under rule 9.11 except: (1) Pursuant to agreement of the parties, or (2) Upon request of a party, and a written determination is made by the court under rule 9.11."[11] The record does not include evidence of an agreement between the parties, excluding the first exception.

As for the second, Derek did not inform the court of his request to impute income, though he imputed income to Megan in his child support calculations. He included an imputed-income request in his post-trial motion to amend and

---

[11] Iowa Court Rule 9.11 provides the circumstances under which the court may vary from the child support guidelines, which requires a "written finding that the guidelines would be unjust or inappropriate" under the listed criteria.

enlarge.[12] During her testimony, Megan agreed she was "probably" capable of minimum wage, but she also testified medical issues had affected her ability to work. Megan testified she had a hearing scheduled the next week on her disability claim. The decree was issued before her claim resolved, leaving Megan's ability to work full-time uncertain at the time the decree was filed.

The court made no written determination it was necessary to impute income to Megan. On our de novo review, we do not find the court's use of actual income in its calculation was unjust or inappropriate, and we affirm.

**AFFIRMED.**

---

[12] In his post-trial motion, Derek asked the court to impute minimum wage income to Megan, at a rate of $12.80 per hour.